SYLVESTER M. SNOW *et al. vs.* THE WARWICK INSTITUTION FOR SAVINGS.

A mortgagee sold mortgaged realty under the powers of sale in the mortgage, and realized a surplus over the mortgage debt.

*Held,* that he was not entitled to compensation for services as mortgagee.

*Held,* further, that he could retain from the surplus his expenses for counsel's services needful to execute the powers in the mortgage. These services described and specified. Also the amounts actually paid out for auctioneer's fees, advertising, and posters.

The mortgagor died before the sale. After the lapse of seventeen months no administration had been taken out on his estate.

*Held,* that the surplus from the mortgage sale should be paid to the mortgagor's heirs.

*Held,* further, that the mortgagee should in the circumstances account for the surplus, with interest thereon at three per cent., which the court thought he might have obtained.

An auctioneer cannot appoint agents or deputies to act for him in his absence.

BILL IN EQUITY for an account and the payment of a surplus after a mortgage sale.

*May* 31, 1890. PER CURIAM. The first question in this case is, what amount, if any, is the defendant bank, as mortgagee under

the two mortgages mentioned in the bill, entitled to retain from the proceeds of the sales under the powers therein, as compensation for its services as mortgagee. We do not think that it is entitled to retain any amount. It took the mortgages as security for money lent, and when it sold under the powers, it sold for its own benefit. It was decided by this court in *Allen* v. *Robbins*, 7 R. I. 33, that a mortgagee is not entitled to compensation for services as such, and the same rule has been followed in cases decided since then, but not reported. The general rule is, that a mortgagee, even after he has taken possession under his mortgage, is not entitled to compensation for his personal trouble in taking care of the estate and renting it, although the mortgagor has agreed that he may have such compensation; the reason being that to allow such compensation would tend directly to facilitate usury and oppression. 2 Jones on Mortgages, § 1132.

The second question is, what amount, if any, is the bank entitled to retain for counsel fees. We think it is entitled to be reimbursed for any expenses it has incurred for counsel fees which were necessary to enable it to execute the powers in the mortgages. In this view, we think the bank is entitled to retain the amount necessary for the payment of its lawyer's fees for preparing, or advising about the preparation of, the advertisements of sale, and for drawing the conveyances to the purchasers after the sales. The sales were made after the death of the mortgagor, and before his estate had been settled, and before an administrator had been appointed upon his estate; and one question which arose in regard to the surplus was, whether it should be paid over to the heirs instantly, or should be retained to meet any demands which might be made upon it in the settlement of the estate. The bank procured the advice of counsel upon this question. We think it should be allowed so much as it has properly paid, or would be required to pay, for such advice. Beyond these matters, it does not appear that it had any occasion for the services of a lawyer, and we do not think it should be allowed to retain for any lawyer's services rendered, if any were rendered, for the bank.

The third question is, what amount is the bank entitled to retain for its auctioneer's fees. It appears that, before advertising the estates for sale, the bank had engaged a person to serve as auction-

eer and had the estates advertised under his name, but that when the time for the sale arrived said person was out of the State, and the sales were made in fact by other auctioneers who were employed for the purpose by the person engaged as aforesaid. These auctioneers sold the estates in pursuance of a special contract, each for ten dollars. The bank claims to retain full auctioneer's fees for the person engaged by it, amounting to $334.05, contending that the auctioneers who actually made the sales are to be treated as the employees or the deputies of such person. We do not think this view is tenable. If the auctioneer engaged by the bank did not attend to make the sales, he committed a breach of his contract and is not entitled to compensation. The auctioneers who actually made the sales must be regarded as acting in their own characters, the auctioneer who employed them not being present; since it is not in the power of an auctioneer to appoint a deputy, or to perform his services as auctioneer by an agent or employee, unless he is himself present supervising the sale. Bateman on Auctions, *29, and cases cited in note 1, *114. Our opinion is, that the bank is only entitled to retain twenty dollars paid to the auctioneers who actually performed the services.

The fourth question is, what amount is the bank entitled to retain for advertising and posters. We can see no reason why it should not retain the full amount of the expense incurred therefor.

The fifth question is, whether the bank shall pay the surplus, after the deductions allowed, to the heirs of the mortgagor, or shall retain it until the appointment of an administrator. As we have already stated, the estates were sold after the death of the mortgagor, and consequently after the equity of redemption had vested in his heirs as real estate. The heirs are clearly entitled to the surplus, therefore, unless the surplus, or some portion of it, is needed to pay the debts of the deceased mortgagor. The mortgagor died seventeen months ago, and, as no administration has been taken out, it is fair to presume that the surplus will not be required for that purpose. At any rate, we think the bank has waited as long as it can be reasonably required to wait for the appointment of an administrator before paying the surplus to the heirs. We decide that it should pay it to the heirs.

We are also asked to decide whether or not the bank is charge-

able with interest upon the surplus retained by it. We think that in the circumstances, and in consideration of the offers made by the complainants and of their request that the fund might be placed on special deposit until the determination of the matters in controversy, the respondent should pay interest at the rate of three per cent. per annum, which we are of the opinion it might have obtained.

Let a decree be entered in conformity with the foregoing views, without costs to either party.

*James Tillinghast & Theodore F. Tillinghast,* for complainants.

*Samuel Ames,* for respondent.