EDWARD A. BANGS & others *vs.* JOHN B. FALLON & others.

Suffolk.    December 3, 1900. — May 23, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Mortgage,* Necessary expenses of foreclosure sale, Construction of agreement to pay interest, Terms of mortgage note incorporated by reference, Interest on surplus proceeds of foreclosure sale.

In a suit in equity against a mortgagee to have the surplus of the proceeds of a foreclosure sale applied to the plaintiff's claim, the mortgagee is entitled to be allowed for counsel fees incurred by him in preventing or removing an injunction to restrain the foreclosure proceedings, this being a reasonably necessary expense of those proceedings.

A mortgagee is .entitled to be allowed a fee paid by him to an auctioneer for his services in conducting a foreclosure sale, if it appears that he paid in good faith no more than the usual price for such services, although there is a reasonable probability that by searching among auctioneers he might have found one who would have undertaken to conduct the sale for a smaller compensation.

A mortgage note read as follows: "For Value Received, I promise to pay to A. B. or order $30,500, in three months from this date, with interest to be paid monthly at the rate of one and one half per centum per month, during the said term, and until the said sum is paid in full." The note was secured by a mortgage on land on which the promisor was about to erect a block of buildings, and the consideration for the note was a written agreement for a building loan whereby the mortgagee agreed to advance to the mortgagor the sum of $30,500 in specified instalments from time to time as the work on the buildings progressed. The agreement provided that the mortgagee should not in any case be liable to make any of the stipulated payments after foreclosure of the mortgage. The note, mortgage and agreement were all delivered as one transaction about a month after the date of the note. Thereafter advances were made from time to time in accordance with the agreement until the mortgagor made default and the mortgage was foreclosed. *Held,* that the legal effect of the contract was that the mortgagee should have interest upon the full amount of the principal of the note from the date of the note and so long as he was under a legal obligation to furnish the money, whether it was set apart or not, and that this obligation ceased only upon the foreclosure of the mortgage.

A mortgage note provided that interest thereon should be paid monthly at the rate of one and one half per centum per month. The mortgage stated the condition to be the payment of a certain sum of money, "with interest, as expressed in the note hereby secured," without naming any rate of interest. It was contended, that the mortgage stated the rate of interest only by reference to a private unrecorded document and thereby failed to comply with the registration laws, and that no rate of interest being named in the mortgage the rate must be six per cent per annum under Pub. Sts. c. 77, § 3. *Held,* that the mortgage deed gave notice that some interest was to be paid and the rate and times of payment were stated in the note, and the reference to the note was sufficient to put persons having claims subject to the mortgage upon inquiry.

If a mortgagee, who holds a surplus from the proceeds of a foreclosure sale, keeps no special deposit of the balance in his hands after satisfying his claims, and there is nothing to show that he has not used the money in his business, he is chargeable with interest upon the surplus from the date of the sale when he received it.

BILL IN EQUITY by eight creditors of Benjamin F. Kenerson against John B. Fallon, Benjamin F. Kenerson, Royal B. Kenerson and Ellen P. Kenerson, for an account of the surplus proceeds of a foreclosure sale in the hands of the defendant Fallon, as mortgagee under a mortgage made by the defendant Benjamin F. Kenerson and foreclosed by Fallon, and a distribution of such balance of purchase money among the plaintiffs in proportion to their respective claims, filed August 3, 1898, and amended September 6, 1898.

In the Superior Court, the case was referred to Henry S. Dewey, Esquire, as master, and coming on for hearing before *Braley*, J., was reserved on the pleadings, the master's report and the exceptions thereto and the master's supplemental report for the consideration and determination of this court.

The master's supplemental report related merely to the respective interests of the different plaintiffs. He found that six of the eight plaintiffs at the time of the foreclosure sale had valid liens on the property subject to the mortgage, and fixed the amount of each claim, the total being $3,645.90.

From the pleadings and report it appeared that the property sold on foreclosure by Fallon consisted of five lots of land with buildings thereon on Norway Street in Boston, and that Benjamin F. Kenerson obtained from Fallon a building loan for the purpose of constructing the houses upon the mortgaged lots. The transaction included an agreement, a mortgage and a note. The agreement was dated September 7, 1897, was under seal and signed by the defendant Fallon and the defendant Benjamin F. Kenerson, and was as follows:

" Whereas Benjamin F. Kenerson has mortgaged to John B. Fallon for the sum of thirty thousand and five hundred dollars a certain parcel of land situated on the northerly side of Norway Street in Boston, being lots numbered forty-nine, fifty, fifty-one and fifty-two and fifty-three . . . and is erecting four houses thereon, said houses to cover the entire width of said estate.

" Now, therefore, the said John B. Fallon hereby covenants and agrees to and with the said Benjamin F. Kenerson, and his heirs and assigns, that he will advance said sum of thirty thousand and five hundred dollars as follows: $1,400 when the foundations and first floors of said four houses are laid; $1,000 when the second floors of said four houses are laid; $700 when the third floors of said four houses are laid; $700 when the fourth floors of said four houses are laid ; $1,000 when the rough plumbing and steam pipes are in, and roofs are on and tight in all said four houses ; $1,000 when said four houses are strapped and ready for plastering; $1,600 when said four houses are plastered ; $500 when said four houses are skimmed ; $2,600 when the standing finish in all said four houses is up ; $4,000 when all of said four houses are fully completed and ready for occupancy ; and $3,000 when thirty days shall have expired from the completion of all work on said buildings, provided that at that time the mortgaged premises shall be free from liens for labor or materials whether affecting said mortgagee's interest or not, and from all other encumbrances or defects of title, except those mentioned in said mortgage, which affect said mortgagee's interest adversely, and upon surrender of this agreement.

" And whereas the said premises are subject to three certain mortgages amounting to thirteen thousand dollars . . . which the said Kenerson hereby requests the said Fallon to pay from the remaining moneys secured by the mortgage made to him so far as the same may suffice. Now, therefore, the said Fallon agrees to hold the said sum of thirteen thousand dollars applicable to the payment thereof as above requested.

" But the said Fallon shall be liable to make none of the payments herein above agreed on his part to be made, until a reasonable party wall agreement shall have been executed in relation to the walls between the lots above mentioned and the adjoining owners to the reasonable satisfaction of counsel of said Fallon. Said payments shall be made only in case said mortgagor shall, to the satisfaction of said mortgagee, or of such inspector as he may select, proceed forthwith to erect said four houses . . . and shall use due diligence in the completion of said buildings in a thorough and workmanlike manner.

" A certificate from the building department of said city of

Boston shall be furnished to said mortgagee when said buildings are completed. All reasonable charges for legal services incurred by said mortgagee in connection with the giving of said mortgage and each of said payments shall be paid by said mortgagor and deducted from each payment as it becomes due, but said mortgagee shall not in any case be liable to make any of the foregoing payments after foreclosure of said mortgage. . . ."

After the attesting clause and the signatures came the following signed by Kenerson: " I, Benjamin F. Kenerson, in consideration of the premises, hereby covenant and agree to pay to said John B. Fallon, from and out of the first and second payments hereinbefore agreed upon, the amount of one per cent as commission upon the face of the loan hereinbefore mentioned."

The mortgage from Benjamin F. Kenerson to the defendant Fallon described in the foregoing agreement was dated August 16, 1897. The condition of the mortgage was as follows : " Provided, nevertheless, that if the said grantor, or his heirs, executors, administrators or assigns shall pay unto the said grantee, or his executors, administrators or assigns, the sum of thirty thousand and five hundred dollars in three months from this date, with interest, as expressed in the note hereby secured, . . . then this deed, as also a certain promissory note of even date herewith, signed by the said grantor, whereby he promises to pay to the said grantee or order the said principal sum and interest at the times aforesaid, shall both be void."

The power of sale clause contained the ordinary provisions for sale in case of default and provided that the mortgagee might " out of the proceeds of such sale or sales retain all sums then secured by this deed, whether then or thereafter payable, including all sums mentioned in the foregoing condition, and all costs, charges and expenses of advertising and selling as aforesaid, or incurred or sustained by him or them by reason of any default in the performance or observance of the condition of this deed, or of any covenant or agreement herein contained, including a reasonable compensation for his and their own time and services, rendering the surplus, if any, together with an account of all such costs, charges and expenses, to the said grantor or his heirs or assigns."

The note was as follows :

" $30,500 x/100.　Boston, August 16, 1897.　For Value Received, I promise to pay to John B. Fallon or order, Thirty Thousand and Five Hundred x/100 Dollars, in three months from this date, with interest to be paid monthly at the rate of one and one half per centum per month, during the said term, and until the said sum is paid in full; both principal and interest to be paid in gold coin of the United States of America of the present standard of weight and fineness.　Benjamin F. Kenerson."

Across the end of the note was printed " Mortgage Note," and below the note was written : " This note is secured by a mortgage of real estate in Norway Street, Boston, to be recorded in Suffolk Registry of Deeds."

The mortgage, the note and the agreement were all delivered as one transaction on September 8, 1897.　Fallon purchased the three prior mortgages by paying $13,000 in accordance with the terms of the agreement, and on various dates from November 6, 1897, to April 27, 1898, made payments to Benjamin F. Kenerson which with the $13,000 already named amounted to $23,000, the total of the cash advanced by Fallon to Kenerson under the mortgage.

At some time after April 27, 1898, Fallon, by reason of breach of the conditions of the mortgage, took possession of the premises for the purpose of foreclosing, and on August 24, 1898, the premises were sold under the power of sale.　On August 24, 1898, the defendant Fallon paid to Rand, Vinton and Wakefield, his attorneys, as expenses of the foreclosure sale, the total sum of $171.90, including the following items :

" For services as attorney in connection with adjournment and sale and drafting mortgagee's deed, $60.

" For services as attorneys in relation to injunction proceedings, these proceedings being upon the original bill herein, and such services being in the matter of obtaining a dissolution of the injunction restraining the defendant Fallon from selling said Norway Street property in the foreclosure proceedings, $50."

Item 39 in Fallon's account was as follows: " 28 Aug.　By cash paid A. Spalding Weld, auctioneer, commission on foreclosure sale $277."

Fallon received in cash as the purchase money from the foreclosure sale $28,200.　He received from Benjamin F. Kenerson

four payments of interest on the mortgage note of $30,500, as follows: November 19, 1897, for one month's interest to September 16, 1897, $457.50; December 4, 1897, for one month's interest to October 16, 1897, $457.50; March 12, 1898, for one month's interest to November 16, 1897, $457.50; April 27, 1898, for one month's interest to December 16, 1897, $457.50, the four payments amounting to $1,830.

The amount of interest on the mortgage note of $30,500 from the day of its date to the time of the foreclosure sale, that is, from August 16, 1897, to August 24, 1898, one year and eight days, at one and one half per cent per month, was $5,612.

The total of the several payments made to Fallon was $30,030, and the total of the several payments made by him and credits due to him was $29,639.69, thus leaving a balance in the hands of Fallon to be accounted for by him of $390.31.

After finding the foregoing facts, the master's report continued as follows:

"The plaintiffs contended that inasmuch as the $30,500 note and mortgage were not delivered before September 7, 1897, and inasmuch as Fallon made no payments on account thereof before that date, Fallon should not be allowed interest on his account for the time before September 7. And the plaintiffs further contended that, inasmuch as the rate of interest was not stated in the mortgage deed, and was only stated in the mortgage note, Fallon in his account should only be allowed interest at the legal rate of six per cent. I find and rule, however, that Fallon is entitled to interest according to the terms of the mortgage note, that is to say, upon the whole sum of $30,500, from August 16, 1897, and at the rate of one and one half per centum per month until the date of the foreclosure sale. The plaintiffs further contended that Fallon was entitled to interest on his several advances of money only from the date of each advance, or specific setting apart under the contract, to the day of the sale of the premises, but I find and rule that said Fallon is entitled to interest as above mentioned.

"The plaintiffs also contended that Fallon in his account should not be allowed credit for the whole sum of $277 paid by him to the auctioneer at the foreclosure sale, and that he should

be allowed on that account only the sum of $50. It appeared in evidence, that the ordinary and customary charge of auctioneers in Boston for such services, in the absence of an express agreement, was at the rate of one per cent on the purchase price, and that the charge of $277 was so reckoned as a commission of one per cent, and that Fallon believed, as there was reasonable ground for him to believe, that he was liable to the auctioneer for the sum of $277. It also appeared in evidence that there was reasonable probability that by making search among the auctioneers in Boston he might have found one who would have undertaken to conduct the sale, an express agreement having been made therefor in advance, for an amount not exceeding $50. I find and rule, however, that Fallon was under no obligation to make such search, and to endeavor to make such express contract, and that he is entitled to credit for the amount actually paid by him to the auctioneer in the sum of $277.

" The defendant Fallon contended that the amount of his legal expenses in defending this suit should be deducted from the balance in his hands from the proceeds of the foreclosure sale. I find and rule, however, that the amount of such legal expenses are not proper charges in the stating of the account under the decree referring the case to me.

" On or about January 22, 1898, the defendants Royal B. and Ellen P. Kenerson, the father and mother of Benjamin F., conveyed to Fallon, by mortgage deed bearing that date, their residence on Appleton Street in Boston, the same then standing in the name of Ellen P. Kenerson, and being then subject to a prior mortgage also for $2,000. Fallon advanced the full sum of $2,000 upon this Appleton Street mortgage, and the proceeds thereof were lent to Benjamin F. Kenerson by his mother and used by him in the construction of the Norway Street houses. This payment of $2,000 by Fallon was separate and apart from the payments made on account of the $30,500 mortgage, and no part of the $2,000 was a part payment on account of moneys due under the Norway Street mortgage.

" The defendant Benjamin F. Kenerson ceased to perform work in the erection of the buildings on Norway Street on or about April 27, 1898, and did practically no work thereon there-

after. On or about June 7, 1898, Benjamin F. Kenerson executed a mortgage deed of the premises on Norway Street to his mother, Ellen P., the mortgage being conditioned for the payment of $10,000 in one year at five per cent and this instrument was acknowledged by him and by him recorded on June 8, 1898. No consideration passed between Benjamin F. and Ellen P. at the time of the giving of this mortgage, and the same was given by Benjamin F. with the intention of giving security to his mother as his creditor, Benjamin F. being at that time indebted to various parties in sums beyond his ability to pay, because he did not want other creditors to get ahead of her, and because his creditors were putting attachments on his property, and with the intention on his part of putting her in ahead. Benjamin F. Kenerson was then indebted to his mother for moneys advanced and loaned to him from time to time during some four years before the date of the last named mortgage, in the sum of $7,765.64. No mortgage note was delivered to Ellen P. Kenerson for this $10,000, and the mortgage deed was not delivered to her in person, but having been left at the Registry of Deeds by Benjamin F. Kenerson in person, the mortgage deed remained in the Registry of Deeds until after the taking of evidence under this reference was begun. Ellen P. had previously requested Benjamin F. to give her a mortgage on the Norway Street property, and he told her one day in the summer of 1898 that he had had one recorded.

"The defendant Fallon testified, and I find, that from the date of the foreclosure sale he has kept no special deposit, or money, set apart as the balance of account on this mortgage matter.

"There was evidence to show, and I find, that the commission of one per cent was received by the defendant Fallon out of the first and second payments, as set forth and provided in the contract.

"There was evidence to show, and I find, that on the day of the foreclosure sale some of the plaintiffs named in the bill had valid liens on the property sold by reason of attachments made subsequent to the delivery of the $30,500 mortgage, and were creditors for substantial sums."

This last finding was made more definite by the findings of the master's supplemental report already mentioned.

The following exceptions were taken by the plaintiffs to the master's report :

1. That the master was in error in allowing the sum of $50 for services of Fallon's counsel in relation to injunction proceedings in this suit.    2. That the master was in error in allowing the sum of $277 as the commission of the auctioneer on the foreclosure sale.    3. That the master was in error in allowing interest on the loan made by Fallon to B. F. Kenerson, or any part thereof, for the time before September 7, 1897, when the mortgage, note and agreement were delivered.    4. That the master was in error in allowing interest on the several advances of loans of money for any time before the actual advancement or specific setting apart of the sums under the contract.    5. That the master was in error in allowing interest on a larger amount as principal than had been actually lent or set apart.    6. That the master was in error in allowing interest on the loan or advances of money at any rate greater than six per centum per annum, no rate whatever having been stated, by sufficient reference or otherwise, in the recorded instruments.    7. That the master was in error in allowing interest at any rate greater than six per centum per annum, — the plaintiffs having no notice of any other rate, and the agreed rate between Fallon and B. F. Kenerson having been concealed, to enable the latter to obtain undue credit and contract debts he was unable to pay.

*G. W. Parke*, for the plaintiffs.

*E. L. Rand*, for the defendant Fallon.

*C. H. Welch*, for the other defendants, submitted the case on a brief.

HAMMOND, J.  1. As to the allowance of $50 for counsel fees.  The bill when filed contained a prayer for injunction against a sale, and this expense was incurred by the mortgagee in preventing or removing an injunction.  It was a part of the expense of the foreclosure proceedings, was reasonably necessary, and was therefore rightly allowed.

2. As to the allowance of $277, paid to the auctioneer for services in selling the property.  Upon this the master reports that it appeared in evidence that this charge, being at the rate of one per cent on the purchase price, was the ordinary and customary charge of auctioneers in Boston for such services in

the absence of any express agreement, and that Fallon believed and had reasonable ground to believe that he was liable to the auctioneer for that sum. It further appeared in evidence that there was reasonable probability that by searching among the auctioneers he might have found one who would have undertaken to conduct the sale, an express agreement having been made in advance, for an amount not exceeding $50. The master ruled that Fallon was under no obligation to make such search, and found that he was entitled to be allowed the sum. We think the master was right. The property was of considerable value, and Fallon may well have thought that, since it was desirable to have an experienced and competent man to conduct the sale, he would be much more likely to find such a person in one who charged the regular rates than in one content to undertake the sale at a much lower rate. In any event he paid in good faith no more than the usual price for such services, and it is no more than just that he should be allowed what he thus paid. .

3. As to the question of interest. The master allowed interest on the face of the note from its date to the time of the sale, at the rate of eighteen per cent per annum, in accordance with its terms. The plaintiffs contend that interest should not be computed upon the note before September 7, 1897, the time of its delivery, and then only upon the payments made, and from their respective dates, and that no interest should be allowed upon money not lent or set apart by the mortgagee.

The note contains an absolute promise to pay in three months from its date the sum of $30,500, with interest thereon at the rate of one and one half per cent per month ; and it is secured by a mortgage of real estate upon which the mortgagor was about to erect a block of buildings. The consideration for the note is to be found in the contemporaneous written agreement. The note, mortgage and agreement, all form part of one and the same transaction ; and, by reference to the latter, it is seen that the money was to be delivered by Fallon only by instalments. The times and the amounts of the several payments are therein set forth, and the mortgagor could not insist upon receiving the money save in accordance therewith. The note called for interest payable monthly, while it was apparent from the

agreement that more than a month might elapse before the mortgagor could rightfully call for any money. In fact no money seems to have been payable to him until November, 1897. It was not the purpose of the instrument to modify the promise contained in the note, but simply to state the consideration for that promise.

By the agreement Fallon had bound himself to lend Kenerson certain sums of money up to the full amount named in the note, with the proviso that he should not in any case be liable to make any payment after the foreclosure of the mortgage. It does not appear, upon the facts found by the master, that Fallon was released from his promise before that time, although it is found that at some time subsequent to April 27, 1898, he entered upon the premises for the purpose of foreclosing the mortgage. If the full amount named in the agreement had been advanced in accordance with its terms, then the full consideration for the note would have been paid, and the mortgagor would have been indebted the full amount. It is not suggested that Fallon was not at all times ready to comply with the terms of his agreement. It was clearly the understanding of the parties that the interest was to be payable monthly on the whole sum named in the note, for four such payments are indorsed upon the note. We think that the legal effect of the contract was that Fallon should have interest upon the full amount of the principal of the note, so long as he was under an obligation to furnish the money, whether formally set apart or not. *Lewin* v. *Folsom*, 171 Mass. 188. Upon the facts found by the master that obligation seems to have ceased with the foreclosure on August 24, 1898, and it does not appear to have ceased before.

But it is insisted by the plaintiffs that, inasmuch as the mortgage, neither in itself nor by reference to any recorded instrument, shows what the rate of interest is, it should not be allowed as against these plaintiffs at a rate greater than six per cent per annum. It is urged that a mortgage note is a private document, to which the public have no rightful access, and that a mortgage deed which states the rate of interest on the debt only by reference to a private, unrecorded document, does not in that respect comply with the registration laws, since the amount of the encumbrance cannot be ascertained from the

record; and that where no rate of interest is mentioned, the rate must be six per cent per annum. Pub. Sts. c. 77, § 3.

The condition of the mortgage is that there shall be paid a certain sum with interest "as expressed in the note hereby secured." The mortgage deed gives notice that some interest is to be paid, and that the rate and the times of payment are set out in the note; and this was sufficient to put the plaintiffs upon inquiry; *Richards* v. *Holmes*, 18 How. 143; and, being put upon inquiry, they must be held to know the facts which in the absence of fraud would be disclosed to them upon such inquiry. See *May* v. *Gates*, 137 Mass. 389. This is not a case where the amount expressly named in the mortgage is less than that named in the note, as in *Frost* v. *Beekman*, 1 Johns. Ch. 288, and similar cases.

The result is that all of the exceptions of the plaintiffs to the report of the master are overruled.

As to the mortgage deed to Ellen P. Kenerson, it seems upon the findings made by the master to have been fraudulent as against these plaintiffs. The master has made no specific finding that it was delivered to the mortgagee. No note was given with it, and it was intended to secure a prior indebtedness to the mortgagee. It cannot affect the plaintiffs' rights to the surplus.

The master having found that, from the date of the foreclosure sale, Fallon has kept no special deposit of the balance in his hands after satisfying his claims, and there being nothing to show that he has not used it in his business, he should be charged interest upon it from the date of the sale, the time he received it.

The result is that the surplus proceeds of the sale, amounting to the sum of $390.31, with interest from August 24, 1898, is to be decreed as belonging to the plaintiffs, and is to be apportioned among them according to their respective interests as they may appear.

*So ordered.*