## ODELL et ux. v. COMMERCE FARM CRED-IT CO. et al.

### No. 1196.

Court of Civil Appeals of Texas. Eastland.
Dec. 15, 1933.

Rehearing Denied Jan. 19, 1934.

T. R. Odell, of Haskell, for appellants.

Terrell, Davis, Hall & Clemens, of San Antonio, for appellees.

HICKMAN, Chief Justice.

On November 24, 1926, appellant J. L. Odell borrowed $8,500 from appellee Commerce Farm Credit Company, for which he executed six principal notes (sometimes called bonds), the first five being for the principal sum of $200 each, and the last for $7,500. Note No. 1 matured January 1, 1928; notes Nos. 2 to 5, inclusive, matured one each successive year; and note No. 6 matured January 1, 1937. The agreed interest rate was 6½ per cent. per annum. The interest to accrue upon the loan was evidenced by two groups of notes. The first group represented interest at the rate of 5½ per cent. per annum, and was attached to the principal notes, there being one interest note for each year's interest to accrue on each principal note until its maturity. The other group represented interest at the rate of 1 per cent. per annum, and was not attached to the principal notes. One note of this second group matured each year concurrently with those of the first. To secure the payment of all the various notes executed by him, appellant and his wife executed and delivered two deeds of trust of even date with the notes on certain real estate situated in Haskell county. One of these deeds of trust, hereinafter designated the first deed of trust, secured the principal notes or bonds, and the interest notes attached to them; and the other, hereinafter designated second deed of trust, secured the 1 per cent. interest notes. A few days after the execution and delivery of the several notes and deeds of trust, they were all transferred by the Commerce Farm Credit Company to Commerce Trust Company, herein called appellee.

Appellant duly made all principal and interest payments up to and including those maturing on January 1, 1931, but has made no payment since that time. He paid all his taxes up to and including those levied for the year 1929, but not those levied for the years 1930 and 1931. On February 1, 1932, the appellee paid the taxes for the year 1930, amounting to $135.30. The taxes for 1931 had not been paid at the time of the trial of this case below. During the year 1932, after default had been made by appellant in the payment of principal and interest due January 1, 1932, and after the appellee had paid the taxes for the year 1930, and after the 1931 taxes had become delinquent, appellee called upon the trustee named in the first deed of trust to make sale thereunder. This he declined to do, but tendered his resignation as trustee, whereupon a substitute trustee was duly appointed and the property was sold by him on October 4, 1932, to appellee for $2,000. There is no question as to the regularity of all the proceedings with reference to the appointment of a substitute trustee, notice of sale, or other prerequisites.

A deed conveying the property to the purchaser was duly executed by the substitute trustee, but before same was recorded in the deed records of Haskell county by the county clerk, the present suit was instituted by appellants J. L. Odell and wife, Ivah Odell, against Commerce Farm Credit Company, Commerce Trust Company, Keystone Mortgage Company, J. C. Allensworth, substitute trustee, and Jason W. Smith, county clerk of Haskell county, to enjoin the filing or recording thereof, to declare the original contract usurious, and to obtain certain relief because of the alleged payment by them of usurious interest. A temporary injunction was issued as prayed for, but later, upon a trial of the case on its merits, the same was dissolved and judgment entered that appellants, who were plaintiffs below, take nothing. Upon the cross-action of appellee, judgment was rendered in its favor against appellants for the title and possession of all the real estate described in the deed of trust; writ of possession and damages in the sum of $25 were awarded, and all costs of the proceedings taxed against appellants. The appeal is from that judgment.

The theory of appellants' suit was that the contract was usurious and on that account all payments made on the notes should be credited upon the principal notes or bonds, and that, so applying them, all of the indebtedness evidenced thereby had been discharged, except a portion of the last note, maturing January 1, 1937. Upon this theory, if correct, there was nothing due at the time the sale was made by the substitute trustee, and, therefore, such sale was unauthorized.

Findings of fact and conclusions of law were filed by the trial judge, but, since there was no disputed fact issue involved, we do not find it necessary to refer to the fact findings. The trial judge concluded, as a matter of law, (1) "that said contract is usurious," and (2) "that the Commerce Trust Company had the legal right to declare the entire principal due as and at the time it did under the deed of trust, because of plaintiffs' failure to pay the taxes on said property for 1930." The judgment rested upon conclusion No. 2. For reasons assigned hereinafter in this opinion, we think conclusion No. 2 is correct and affords a support for the judgment rendered. We are just as firmly convinced that conclusion No. 1 is incorrect, and, since appellees have by proper cross-assignments challenged the correctness of that conclusion, we shall first consider their cross-assignments. It is obvious that, if the contract was not usurious, there was no basis for appellants' suit, and the assignments in their brief present immaterial questions.

■ Was the contract usurious? It must be borne in mind in construing the contract that it is made up of several parts, viz., (1) the principal notes or bonds, (2) the coupons covering 5½ per cent. interest attached to these principal notes, (3) the first deed of trust securing the payment of the principal notes' and the attached coupons, (4) the second lien notes for 1 per cent. interest, and (5) the second deed of trust securing these second notes. The provisions of these different instruments with reference to accelerated maturity should be considered together with a view of determining whether they evidence a contract under which there is any contingency by which, if the contract were enforced, appellee might receive more than the lawful rate of interest. The principal notes or bonds contained this provision: "If this Bond or any installment of interest thereon is not paid when due *the principal* of this and all other bonds forming a part of this series shall come due and collectible at once without notice at the option of the holder. The principal of this Bond from and after its maturity, and all past due interest thereon, shall bear interest at the rate of ten percentum per annum, payable annually, from due date thereof until paid." (Italics ours.)

This language does not provide for the collection of notes representing unearned interest upon default in the payment of the bond or any installment of interest, but only that the principal of all the bonds shall become due and collectible. No possible taint of usury could be read into that language. The provision that the principal of the bond after its maturity and all past due interest thereon shall bear interest at the rate of 10 per cent per annum from the due date thereof until paid, does not render the contract usurious. Crider v. San Antonio Real Estate Building & Loan Ass'n, 89 Tex. 597, 35 S. W. 1047. The conclusion is that no usuri-

ous contract is evidenced by the provisions of the principal notes.

■■■ In the first deed of trust there is a description of the indebtedness secured thereby. A part of that description is in this language: "Said Bond(s) further provide that, if the principal or any installment of interest thereon is not paid when due, then the entire indebtedness shall become due and collectible at once without notice, at the option of the holder."

It will be noted that no obligation is created or expressed by this language. It is a misdescription of the principal notes or bonds. They did not contain that provision. Appellees designate this as "hearsay," and the designation is not at all inapt. Further pertinent provisions of the first deed of trust are:

"Now, therefore, if default shall be made in the payment of the principal or any installment of interest upon said bond(s) or any part of them when due, and any one of said sums shall remain unpaid, or in the case of the breach of any of the covenants, conditions or agreements herein mentioned or contained in said bond(s), or in any case herein provided, or if any tax assessment mentioned in clause 3 foregoing shall be imposed within the State of Texas, then at the option of the legal holders of said bond(s) the same *with interest and all other indebtedness and charges secured hereby* shall, without notice, become due and payable, and on the application of the said legal holder or holders, or any of them, the said Trustee, his successor or substitute appointed hereunder is hereby empowered to take possession of said property and to sell the same to the highest bidder."

"The proceeds of said sale shall be applied as follows: First: to the payment of all expenses of advertising, selling and conveying said premises, including attorney's fees as provided in said bond(s) and a commission to the Trustee making said sale of Five (5%) per cent of the indebtedness then due hereunder, Second: to the payment *of the indebtedness secured hereby*, and the balance, if any, shall be paid to grantor(s) or his (her) (their) heirs, assigns or personal representatives." (Italics ours.)

It might be plausibly argued that the language quoted next above, standing alone, is susceptible of the meaning that unearned interest was not to be abated, but that language must be construed in connection with the provisions of the principal note above quoted. In determining the amount due and the times and amounts of the payments of the principal and interest, the primary source of such information is the note itself wherein is contained the obligation to pay. The office and purpose of a deed of trust are to secure the performance of the contract evidenced by the note. In construing the notes and deed of trust

to determine whether or not the contract is usurious, the provisions of the former are the more important factor. In the case of Dugan v. Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332, it is disclosed in the opinion that the note which was secured by a deed of trust contained a stipulation "making the principal of the note become due, at the option of the holder thereof, upon the failure to pay any installment within 30 days after it should become due." There is no material difference between that stipulation and the one contained in the principal note in the instant case. The deed of trust securing the note in the Dugan Case contained the following clause: "Upon the failure of the borrower to pay said note, or either of said coupons, or failure to comply with any of the stipulations contained in the said deed of trust, the whole sum of money secured thereby may without notice to the borrower, at the option of the lender or his assigns, and at his option only, be declared due and payable at once."

This provision is in legal effect the same as that above quoted in the first deed of trust in the instant case. Our Supreme Court in construing the provisions of the note and deed of trust together held that the contract in the Dugan Case was not usurious. If that decison is still the law in Texas, it clearly governs the instant case. In the case of Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 284, 39 S.W.(2d) 11, 84 A. L. R. 1269, our Supreme Court, speaking through Justice Greenwood, seems to have disagreed with some of the language used in the opinion of Dugan v. Lewis, but expressly approved the holding therein in this language: "There was no possibility of usury in the contract involved in Dugan v. Lewis. While the deed of trust contained a clause that the whole sum of money secured by the lien of the deed of trust might be declared at once due, at the option of the lender, yet the note, which the deed of trust secured, specifically provided that the debtor's failure to pay the note or any installment of interest was to result in 'making the principal of the note become due, at the option of the holder.' The court completely disposed of the case when it held: 'We do not think a correct construction of the contract will make a greater amount of interest due and collectible upon it than shall have accrued on the principal, calculated up to the date of collection at the rate named in the note, or, in other words, that any unearned interest comes within the proper meaning of the stipulation.' "

That language clearly means that the provisions of the note should control over those of the deed of trust securing same. That is particularly true in a case like this, where, by giving controlling effect to the provisions of the note, the contract will be lawful, whereas by permitting the provisions of the deed of

trust to control, the contract will be unlawful. "The court must give to the terms of the contract, if fairly susceptible of it, a construction that will make it legal. * * *" Galveston & H. Inv. Co. v. Grymes, 94 Tex. 613, 63 S. W. 860, 861, 64 S. W. 778, quoted with approval in Shropshire v. Commerce Farm Credit Co., second opinion, 120 Tex. 400, 39 S.W.(2d) 11, 84 A. L. R. 1269.

Our conclusion is that, construing the principal notes and first deed of trust together, they do not evidence a usurious contract. Dugan v. Lewis, supra, Shropshire v. Commerce Farm Credit Co., supra.

■■ A consideration of the provisions of the second deed of trust should remove all doubt as to the construction of the contract. One of the provisions of that instrument was as follows: "Payments made prior to maturity on the bond(s) or notes secured by said First Deed of Trust shall not entitle the notes secured hereby to any reduction, but it is agreed and understood that if said bond(s) or note(s) is (are) matured by the holder(s) thereof, on account of default in payment of any installment of interest thereon, or in the non-performance of any of the stipulations, conditions or agreements contained in said Deed of Trust, or if matured by operation of law, and foreclosure is had under said First Deed of Trust, *the said notes hereby secured shall be cancelled to the extent that they represent unearned interest.*" (Italics ours.)

Another provision in that deed of trust relating to the application of the proceeds of sale, was in this language: "First: to the expense of making the sale, including compensation of the trustee; Second: to the payment of the *indebtedness hereby secured and then due;* Third: to the payment of *any delinquent interest,* taxes, attorney's fees, or other sums due under the terms of said First Deed of Trust, and the balance, if any, shall be paid to the grantor(s), their heirs. or assigns. And such sale shall not be held to exhaust the powers granted to said trustee, or his successor hereunder, but same shall survive and subsequent sales may be had upon such a default so long as any of the indebtedness secured hereby remains unpaid." (Italics ours.)

It cannot be reasoned that under these last quoted provisions the notes secured thereby, which were the notes representing the 1 per cent. interest, could be matured by default in payment of an installment of either principal or interest so as to enable the lender to collect unearned interest. While this second deed of trust secured a different group of notes from those secured by the first deed of trust, yet all of these instruments were executed at the same time, and as a part of the same transaction, and should be construed together. So construing them, we conclude that the contract was not usurious.

It was agreed that, prior to the foreclosure sale, appellants had made default in the payment of an installment of both principal and interest, from which it follows that appellee had the right to have the premises sold by the substitute trustee. Since it was also agreed that all prerequisites of a valid sale were complied with, we conclude that the deed from the substitute trustee to appellee passed title to the land, and the county clerk should not be enjoined from recording same. Many authorities are cited by appellees in support of their cross-assignments, but we think the case is ruled by Dugan v. Lewis and Shropshire v. Commerce Farm Credit Co., supra, and shall not lengthen the opinion by discussing the other authorities.

■ We are also of the opinion that appellees had the right to have the sale made under the deed of trust on account of the failure of appellants to pay the taxes for the year 1930. It is not questioned that such right was given in the first deed of trust. The claim, as we understand it, is that, under the provisions of Acts of the 3d Called Session of the 42d Legislature (1932), chapter 46, pp. 114, 115 (Vernon's Ann. Civ. St. art. 7336a), the taxes were not delinquent at the time of the sale, and, therefore, the provisions of the deed of trust were not applicable. Much reliance is placed by appellants upon the opinion of our Supreme Court in Jones v. Williams, 121 Tex. 94, 45 S.W.(2d) 130, 139, 79 A. L. R. 983. As we construe the statute and the opinion, they afford no support for the contention. The statute does not undertake to remit taxes, nor even to postpone the maturity date thereof. On the contrary, by its very language it deals only with taxes which have become delinquent. The purpose of this act was to release all interest and penalties accrued on delinquent taxes, provided such taxes were paid on or before December 31, 1932. The Supreme Court decision referred to expressly holds that the Legislature would have no power, under the existing facts, to waive any taxes. Further, the taxes for 1930 were paid on February 1, 1932. The legislative act relied upon became effective September 22, 1932. By the terms of the statute it was not applicable to taxes paid before the act became effective. In the opinion in Jones v. Williams, supra, in considering a similar statute, Chief Justice Cureton used this language: "The remission statute applies unless prior to the effective date of the statute the taxes had actually been collected or reduced to final judgment."

The judgment of the trial court will be affirmed.