AMERICAN NAT. INS. CO. v. SCHENCK.

No. 4340.

Court of Civil Appeals of Texas. Amarillo. July 1, 1935.

Rehearing Denied Sept. 9, 1935.

Bledsoe, Crenshaw & Dupree, of Lubbock, for appellant.

Lockhart & Brown, of Lubbock, for appellee.

HALL, Chief Justice.

Appellee, W. F. Schenck, sued the appellant, American National Insurance Company, and C. J. Norton, alleging in substance that on October 22, 1930, he borrowed from appellant the sum of $47,000 and executed his promissory note payable in the sum of $75,463.20. That the amount of said note in excess of $47,000 represented interest thereon to the date of final payment. That said note was payable in 144 monthly installments of $425.05 each. That to secure the payment of said note he executed a deed of trust on certain lots with the improvements thereon in the city of Lubbock. The petition describes the note by its terms, alleging that it was usurious upon its face. That after the execution of the contract he paid appellant approximately $4,571.71. That on the first day of December, 1931, after proper application was made of all sums so paid, he was indebted to appellant in the sum of $42,428.29. That on said first day of December, 1931, the appellant, through C. J. Norton, as substitute trustee named by appellant, advertised and sold the property, and appellant became the purchaser at said sale for the sum of $51,-271.92, whereupon the trustee conveyed the property to appellant. That by reason of the facts, appellant and Norton were bound to account to appellee for the difference between the amount of the indebtedness owing by him at the time of the sale and the amount for which said property sold, to wit, $8,843.63. That by properly applying the payments made by him there was nothing due to appellant at the time of the sale, and it had no right to place the note in the hands of an attorney, and was not entitled to recover attorney's fees provided for in the note and deed of trust. He alleges in the alternative that in the event it is held that the contract was not usurious, and that the appellant was entitled to and did place the same in the hands of attorneys for collection, then the 10 per cent. stipulated in the note and deed of trust as attorney's fees was unreasonable and unconscionable. That if the contract was not usurious there would have been owing to appellant on the date of the sale approximately $46,611.85 and reasonable attorney's fees, not to exceed the sum of $100, and in such event appel-

lant would be indebted to appellee in the sum of $4,561.08, that being the difference between the amount of his indebtedness and the bid made by appellant at the sale. The prayer is for judgment for the amount of his debt, and for the foreclosure of an equitable lien upon the premises to secure the payment thereof.

Copies of the note and deed of trust were attached to the petition.

The appellant answered by general and special demurrers, special exceptions and general denial, and further alleged that they loaned appellee the sum of $47,000 and calculated the total interest on said loan for the entire period, and, after making proper and legal deductions of interest for payments to be credited on the principal, found that the total interest at the agreed rate of 8.59 per cent. per annum would be the sum of $28,463.20, which sum was added to the face of the note, the total amount being made payable in 144 installments of $524.05 each. That under the terms of the note and mortgage it could only declare as due such portion of the principal unpaid and the accrued interest thereon at the time of any default, and had no authority to declare as due the interest which was not earned at that time. That if the said language contained in the note and deed of trust did not clearly and specifically so provide, through inadvertence and mistake the language used was ambiguous, and failed to clearly express the intent of the parties and of appellant. That it was not the intent of appellant to charge usurious interest or provide that it could accelerate the maturity of the note as to interest not earned; that at the time it declared the debt due on account of defaults by appellee it declared it due for only the amount of the unpaid principal and earned interest, and did not include any unearned interest. Appellant further set up various defaults on the part of the appellee, and alleged that by reason of such fact it had declared as due the unpaid principal and all interest earned up to said date in the sum of approximately $47,700, and had placed the note in the hands of attorneys for collection, and the attorney's fees amounted to the sum of more than $4,700. That it had paid certain insurance premiums in the sum of approximately $300 upon policies covering the improvements upon the property, which, under the terms of the deed of trust, was secured by the lien, and that by reason of said facts at the time of the sale appellee was indebted to it in the sum of more than $52,000. That no

actual money was paid at the time of the sale, but appellant simply gave appellee credit upon its debt, and after crediting appellee with the amount of the bid there still remained an unpaid balance. That the trustee's commission for making the sale of 5 per cent., as provided in the deed of trust, amounted to $2,563.59.

The trustee, Norton, adopted the allegations of the appellant's answer.

Appellee filed a supplemental petition, consisting of several special exceptions and a general denial. He specially denied the payment of any attorney's fees or trustee's fees except the sum of $50. The special exceptions contained in the first supplemental petition were directed to appellant's allegations of mistake and ambiguity in the contract, and against its denial of an intent to charge usury. These exceptions were sustained by the court and the allegations were stricken, to which appellant excepted.

Although a jury was impaneled, at the conclusion of the testimony the trial court, entertaining the view that the contract was usurious as a matter of law, gave a peremptory instruction to the jury to find in favor of appellee in the sum of $8,069.71, with interest from December 1, 1931, at six per cent. per annum, and to find in favor of the defendant Norton.

Based on the verdict the court rendered judgment in favor of appellee against appellant in the sum of $9,176.91, with interest from date of the judgment at 6 per cent., and all costs of suit; and further declared the existence of an equitable lien on the premises described in the deed of trust and ordered its foreclosure.

Schenck made payments to the American National Insurance Company aggregating $4,146.62 prior to the time of the sale. The appellant paid the trustee, Norton, $50 for his services in making the sale. No other amount was paid by the appellant either to the trustee or to Schenck. The note which was executed by Schenck and wife is, in part, as follows:

"$75,463.20.

"Galveston, Texas, October 22nd, 1930.

"For value received, we promise to pay to the order of American National Insurance Company, a corporation, the sum of Seventy-Five Thousand Four Hundred Sixty-Three and 20/100 ($75,463.20) Dollars, in gold coin of the present value, weight and fineness, of which said amount the sum of Forty-Seven Thousand and 00/100 ($47,-

000.00) Dollars is principal and the remainder interest. Said sum is payable in one hundred forty-four (144) monthly installments of Five Hundred Twenty-Four and 05/100 ($524.05) Dollars each, the first installment to become due and payable on the 25th day of November, A. D., 1930, and one of said installments to become due and payable on the same day of each and every succeeding calendar month thereafter until the entire indebtedness shall have been fully paid. * * *

"This note is given for a loan of Seventy-Five Thousand Four Hundred Sixty-Three and 20/100 ($75,463.20) Dollars, and is secured by a deed of trust to Shearn Moody, Trustee, of even date herewith. * * *

"It is expressly provided that upon default in the punctual payment of any of the above installments as above promised, as same shall become due· and payable, the entire indebtedness secured by the hereinbefore mentioned lien shall be matured, at the option of the holder. * * *

"Matured unpaid installments shall bear interest at the rate of ten per cent per annum from maturity until paid.

"And we hereby agree to pay all expenses incurred, including attorney's fees of ten per cent of the amount due on said note, if placed in the hands of an attorney for collection, or if collected through Probate, Bankruptcy or other judicial proceedings."

The recitals in the deed of trust which are pertinent to the questions hereinafter discussed, are as follows:

"We are justly indebted to the said American National Insurance Company, a corporation, duly incorporated under the laws of the State of Texas, having its domicile and principal place of business in Galveston County, Texas, in the principal sum of Seventy-Five Thousand Four Hundred Sixty-Three and 20/100 ($75,463.20) Dollars, the said indebtedness being evidenced by, and being payable as specified in one (1) certain promissory note of even date herewith, executed and delivered by the undersigned to, and payable to the order of, said American National Insurance Company, in Galveston, Texas, said note being for the sum of $75,-463.20, of which sum the sum of Forty-Seven Thousand and 00/100 ($47,000.00) Dollars is principal and the remainder interest. Said sum is payable in One Hundred Forty-Four (144) monthly installments of Five Hundred Twenty-Four and 05/100 ($524.05) Dollars each, the first of which installments ·to become due and payable on the 25th day of November, A. D., 1930, and one of said installments to become due and payable on the same day of each and every succeeding calendar month thereafter until the entire indebtedness shall have been fully paid. And said note further providing that upon default in the punctual payments of any of the said installments, as same shall become due and payable, the entire indebtedness shall be matured, without notice, at the option of the holder. In which said note it is recited, stipulated and provided that all matured unpaid installments shall bear interest from the maturity thereof, until paid, at the rate of ten per cent per annum; that if default is made in its payment at maturity, and it is placed in the hands of an attorney for collection, or if it is collected by legal proceedings, we agree to pay the holder thereof an additional amount equal to ten per cent of the aggregate of the principal and interest then owing thereon as attorney's fees: * * * this instrument is executed and delivered for the purpose of securing and enforcing the payment of (a) the indebtedness evidenced by the promissory note hereinbefore described, according to the tenor and effect thereof; * * *

"But if we should make default in the payment of said indebtedness, or any part thereof, principal or interest, when and as the same shall become due and payable, whether according to its terms, or according to the terms of this instrument, as hereinafter provided, it shall thereupon, or at any time thereafter, the said indebtedness, or any part thereof, principal or interest, remaining unpaid, be the duty of said Trustee * * * to sell * * *

"Out of the money arising from such sale, the said Trustee shall pay first all of the expenses of advertising, sale and conveyance, including a commission of five per cent to himself, and he shall then pay to said American National Insurance Company, or other holder or holders thereof, the full amount of the indebtedness, principal, interest and attorney's fee, secured thereby and then due and owing by us, rendering the balance of the purchase money, if any, to us or to our heirs or assigns. * * *

"Fourth: That if we shall make default in· the performance of any one or more of the foregoing stipulations, provisions or agreements, or if we shall make default in the payment of the indebtedness hereby secured, or any part thereof, the principal or interest, when and as the same shall become due and payable according to its

terms, or according to the terms of any extension or extensions of the same, or any part thereof, then and in any such case, and notwithstanding any license of or consent to any former such default, or any waiver of the benefit hereof in a prior instance, the entire amount of the indebtedness owing by us and secured hereby and then unpaid shall, without notice, immediately mature and become due and payable, if the said American National Insurance Company, or other holder or holders thereof, or of any part thereof, shall so elect. * * *

"In the event of any delinquency in the payment of any installment as hereinbefore provided, said American National Insurance Company is given the right and authority to collect all rents due or to become due under any existing lease or leases or any lease or leases that may in the future be made of the premises hereinabove described, or any part thereof, and to apply such rents as credits upon any past due and unpaid portions of said note, either principal or interest."

■ According to the terms of the contract, the amount of the loan was intended to be repaid on the amortization plan. Under such contract the debtor agrees to make to the creditor a specific number of equal periodic payments of a particular amount. The contract is not usurious if the payments so made do not exceed the amounts which, if each payment is applied first to the payment of interest at not more than the maximum conventional rate, and then the balance of the payment is applied to the reduction of the principal, and the obligation is thereby discharged by the agreed number of payments, but if the payments agreed to be made exceed the amounts so necessary to discharge the principal and lawful interest, the contract is usurious. 66 C. J. 206, § 217; Harrop v. National L. & Inv. Co. (Tex. Civ. App.) 204 S. W. 878.

The appellee insists that the contract in this case is usurious, independent of the acceleration of maturity provisions therein contained, in that under the rule laid down by the Supreme Court in the case of Galveston & H. Inv. Co. v. Grymes et al., 94 Tex. 609, 63 S. W. 860, 64 S. W. 778, for the calculation of interest on contracts of this character, the interest contracted for, over the full term of the loan, is in excess of 10 per cent. per annum. This contention was not made in the court below.

■ The rule is established that on appeal the parties are restricted to the theory on which the case was tried in the court below. American Surety Co. v. Shaw (Tex. Com. App.) 69 S.W.(2d) 47; Rockhold v. Lucky Tiger Oil Co. (Tex. Civ. App.) 4 S.W.(2d) 1046; 3 Tex. Jur. 168, § 111. We will say in passing, however, that the Grymes Case has no application to the case at bar. In cases of this character, where interest is included in the face of the note and it is to be discharged by partial payments made at stated intervals, the rule for computing the interest and applying the payments is announced by the Supreme Court to be as follows: "When partial payments are made, interest is to be computed to the time when a payment alone, or in conjunction with preceding payments, shall equal or exceed the interest due. Then deduct the payment and calculate the interest on the balance until the next payment or payments as before, and so on." Odle v. Frost, 59 Tex. 684; Hampton v. Dean, 4 Tex. 455; Hearn v. Cutberth, 10 Tex. 216; Clark v. Brown, 48 Tex. 212.

■ The rate of interest which the makers should pay in discharging the note is not stated either in the face of the note or in the mortgage securing same, but the amount of principal, together with the amount of interest and amount of payments necessary to discharge the indebtedness, being shown, a calculation discloses that interest was charged at the rate of eight and a fraction per cent. per annum. The testimony bearing upon this issue was excluded, and we think this action of the court is error.

There is attached to the statement of facts, as a part of the appellant's bill of exception, a table which demonstrates that if the indebtedness had run the full time, and the payments had been applied as shown by photostatic copies of the appellant's ledger, no usurious interest would have been paid.

■ As stated above, the appellant pleaded that in making the loan it did not intend to charge interest at a usurious rate, and that if by any sort of calculation the amount collected would have resulted in usury, it was through mistake. The court sustained a demurrer to this allegation. This was error. Intention is a material element in contracts of this character. In Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 285, 39 S.W.(2d) 11, 84 A. L. R. 1269, Judge Greenwood said: "Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or

not; but on whether there was a purpose in his mind to make more than legal interest for the use of money, and whether, by the terms of the transaction, and the means used to effect the loan, he may by its enforcement be enabled to get more than the legal rate." Henry v. Sansom, 2 Tex. Civ. App. 150, 21 S. W. 69.

It is said in 66 C. J. 178: "Mistakes in calculation, or other mistakes of fact made in good faith, resulting in the lender's unintentionally charging or receiving something in excess of what is allowed by law, negative the existence of the unlawful intent necessary to procure usury."

Id., 305, § 302: "Where the allegations of the pleader put usury in issue, and are broad enough to cover the evidence in question, any competent and material evidence of matters, such as the negotiations preceding or circumstances surrounding the execution of the contract which tend to show the true intent of the parties and the real nature and terms of the contract, is admissible for the purpose of either supporting or voiding the transaction. The rule comprehends and applies to parole or extrinsic evidence, even though the contract or obligation claimed to be usurious is in writing and legal on its face; or, according to some but not other authorities, even though the written contract is usurious on its face." Smith v. Stevens, 81 Tex. 461, 16 S. W. 986; Interstate Savings & Trust Co. v. Hornsby (Tex. Civ. App.) 146 S. W. 960; Roberts v. Coffin, 22 Tex. Civ. App. 127, 53 S. W. 597.

The photostatic reproduction of the page of appellant's loan record, upon which the payments made by Schenck were recorded, states that the rate of interest was 8 per cent. It appears that nine payments were made. Taking the second payment of $524.-05, the record shows that $189.03 was credited upon the principal on December 30, 1930, leaving a balance of $46,623.34, and that $335.02 interest, which was due December 25, 1930, was paid on December 30, 1930. Other payments show that from month to month payments credited to interest were gradually reduced in amount, while payments credited to principal were correspondingly increased. This testimony tends to show that the rule announced by the Supreme Court for crediting partial payments was being strictly complied with by the appellant.

■ Watson, one of the officers of the appellant, said that payments upon principal increased each month, and interest payments decreased correspondingly. In the absence of testimony to the contrary, we must assume that the credits were made in accordance with the understanding of the parties, and this constitutes a practical construction of the contract between the parties to it, which has great weight with the Court.

It is not necessary for us to decide the question as to whether the contract upon its face is usurious, but in the light of Walker v. Temple Trust Co. (Tex. Com. App.) 80 S.W.(2d) 935, Reynolds Mortg. Co. v. Thomas (Tex. Civ. App.) 61 S.W.(2d) 1011, O'Dell v. Commerce Farm Credit Co. (Tex. Civ. App.) 67 S.W.(2d) 626, and numerous other cases recently decided by the Supreme Court, we are strongly inclined to the opinion that the contract is not usurious upon its face, and certainly it could not be held to be so if the item of attorney's fees is eliminated.

■ The only remaining assignment necessary to be considered is that relating to the collection of attorney's fees. Where a mortgage or deed of trust provides for either a foreclosure by suit or by sale by a trustee under the power contained in the instrument, and the provisions relating to the attorney's fees in the note and mortgage are not identical, that contained in the mortgage will control. Tompkins v. Drennen, 95 Ala. 463, 10 So. 638; Elkin v. Rives, 82 Miss. 744, 35 So. 200. The note contains no provision for a sale by a trustee. The mortgage provides specifically, and with great detail, as to the manner and method of procedure for a sale by the trustee in the event of default. No suit was filed to foreclose the mortgage lien. The appellant elected to foreclose by sale under the power. The undisputed evidence is that the trustee, Norton, was paid $50 for executing the power of sale. In its essence this case is a suit by Schenck and wife to recover the attorney's fee amounting to $4,-700 which they allege was illegally and improperly retained out of the proceeds of the sale. That such a suit can be properly maintained cannot be questioned. Wilkinson v. Baxter's Estate, 97 Mich. 536, 56 N. W. 931; Truesdale v. Sidle, 65 Minn. 315, 67 N. W. 1004.

The testimony bearing upon this question may be briefly stated as follows: The mortgage provides that out of the money arising from the sale the trustee shall pay first all of the expense of advertising, sale, and con-

veyance, including a commission of 5 per cent. to himself, and he shall then pay the said American National Insurance Company, or other holder or holders thereof, the full amount of the indebtedness, principal, interest, and attorney's fee, secured thereby and then due and owing by the mortgagors, rendering the balance of the purchase money, if any, to Schenck and wife.

The question to be decided is: Could the appellant, after having elected to proceed under the power of sale, claim fees under the terms of the mortgage for its attorney who, the record shows, was employed at an annual salary of $15,000, and who did nothing whatever in his professional capacity toward the collection of the indebtedness? There is a want of harmony in the decisions upon this question.

■■ Appellant cannot resort to both legal proceedings and foreclosure by sale by the trustee. Coffman v. Brannen (Tex. Civ. App.) 50 S.W.(2d) 913; Terry v. Witherspoon (Tex. Civ. App.) 255 S. W. 471; Id. (Tex. Com. App.) 267 S. W. 973. It is bound by its election of remedies, and we incline to the opinion that trustee's fees, and not the 10 per cent. attorney's fees provided in the note, should be the limit of recovery for expenses.

W. O. Watson, appellant's assistant treasurer, testified that the right to declare the debt due was exercised by appellant about November 2, 1931, and that the note was placed in the hands of its attorney for collection with instructions to foreclose the lien; that he was a practicing attorney at Galveston, and the head of the company's legal department; that he has attorneys working under him, and supervises the legal business of the company for an annual salary of $15,000; that it was the custom of the company when a note became due ordinarily to deliver it to its attorney; that if there had been any attorney's fees paid on this note he presumed it was paid in to the company. When asked if he paid said attorney 10 per cent. in this transaction he said, "No," that nothing was paid him except his salary; that the substitute trustee was paid $50.

■ While some cases hold attorney's fees may be retained by the trustee when an employment of legal counsel is necessary, the better rule seems to be that a mortgagee is not entitled to charge attorney's fees where the services of an attorney were not required in collecting the note through legal proceedings. Bangs v. Fallon, 179 Mass. 77, 60 N. E. 403; Raleigh Sav. Bank, etc., Co. v. Leach, 169 N. C. 706, 86 S. E. 701; Duffy v. Smith, 132 N. C. 38, 43 S. E. 501; Mauck's Estate, 24 Pa. Dist. R. 572, 41 Pa. Co. Ct. R. 683; Snow v. Warwick Inst. for Sav., 17 R. I. 66, 20 A. 94.

It is held that until the services of an attorney are actually rendered for the purpose of collecting a past-due mortgage debt, no debt exists on account of such stipulation which can be added to the amount of the note or mortgage. British & American Mortg. Co. v. Stuart (C. C. A.) 210 F. 425.

■ We are inclined to the opinion that before the appellant would be entitled to collect $4,700, or 10 per cent. of the indebtedness, as attorney's fees, as stipulated in the note, it would have to show that the amount was reasonable and that the services of the attorney were necessary to enable the trustee to properly execute the power, and that he actually rendered service to the company in the matter. In the condition in which we find the record with reference to this contention, we do not believe the evidence supports the right of appellant to collect the attorney's fee. Whether such right exists is a question of fact to be decided by the jury upon another trial. Whether the collection of the attorney's fee was a device to enable appellant to collect usurious interest is a question which is not directly presented in the record, and we, therefore, do not pass upon it.

Because the court sustained the exception to the allegation of intent and mistake and excluded testimony, over appellant's objection, bearing upon the question, the judgment is reversed, and the cause remanded.