TEXAS BLDG. CO. et al. v. COLLINS et al.*
(No. 8353.)

(Court of Civil Appeals of Texas. Ft. Worth.
April 15, 1916. Rehearing Denied
May 27, 1916.)

1. APPEAL AND ERROR ⬅197(2) — PARTIES
ENTITLED TO ALLEGE ERROR—ERROR INVIT-
ED BY OBJECTING PARTY—ISSUES.
    Where a railway company and its contrac-
tor litigated with a subcontractor's creditors
the amount due such subcontractor, they can-
not urge upon appeal, for the first time, that
the issue was not presented by the pleadings.
    [Ed. Note.—For other cases, see Appeal and
Error, Dec. Dig. ⬅197(2); Pleading, Cent.
Dig. §§ 1428-1441.]

2. CONTRACTS ⬅287(1) — CONSTRUCTION —
COMPENSATION—AMOUNT.
    Under contracts providing that the amount
due from a railway company to a subcontractor
should be fixed by an estimate signed and certi-
fied by the railway company's chief engineer,
held that an unsigned and uncertified instru-
ment was not the contemplated final estimate.
    [Ed. Note.—For other cases, see Contracts,
Cent. Dig. § 1308; Dec. Dig. ⬅287(1).]

3. CONTRACTS ⬅350(2) — EVIDENCE OF
AGREEMENT—SUFFICIENCY.
    Testimony that a subcontractor did not
challenge bills charging it certain sums for
railway equipment hire, and that such bills
were computed from a contract with the sub-
contractor, is insufficient to establish an ex-
press agreement to pay such sums as against
the subcontractor's creditors.
    [Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 1820, 1821; Dec. Dig. ⬅350(2).]

4. CONTRACTS ⬅234—CONSTRUCTION—COM-
PENSATION—DEDUCTIONS.
    A contract provision between a railway
contractor and a subcontractor held to author-
ize the contractor to pay only such claims
against the subcontractor as might become liens
on the railway.
    [Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 1099, 1100; Dec. Dig. ⬅234.]

5. CONTRACTS ⬅234—CONSTRUCTION—COM-
PENSATION—DEDUCTIONS.
    A railway company held authorized, by
various contract provisions, to pay for posts
used by its subcontractor and for which a lien
might be filed against the railway, and to
charge such cost to the subcontractor, irre-
spective of his creditors' claims to any amount
due him.
    [Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 1099, 1100; Dec. Dig. ⬅234.]

6. INTERPLEADER ⬅35 — COSTS — PERSONS
ENTITLED—STAKEHOLDER.
    In a suit by certain employés and mate-
rialmen against a railroad subcontractor, the
railway company and the contractor are not
entitled to attorney's fees as stakeholders,
where they did not pay into court, but con-
tested, the amount found due from them to
the subcontractor.
    [Ed. Note.—For other cases, see Interpleader,
Cent. Dig. § 76; Dec. Dig. ⬅35.]

7. APPEAL AND ERROR ⬅1073(1)—HARMLESS
ERROR—JUDGMENT.
    It was not prejudicial error to order per-
sonal judgments against a railway company in
favor of a subcontractor's creditors, where the
decree relieves it from liability upon payment
of the amount due from it to the subcontractor.
    [Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4240; Dec. Dig. ⬅
1073(1).]

8. RAILROADS ⬅159(4) — LIENS — PERSONS
ENTITLED TO—STATUTE.
    Vernon's Sayles' Ann. Civ. St. 1914, art.
5640, giving a lien to mechanics, laborers, and
operatives on railway construction work, ap-
plies to copartners who work themselves and
employed about 30 teams on grading work, es-
pecially where no profit was made on the job.
    [Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 489, 490; Dec. Dig. ⬅159(4).]

9. APPEAL AND ERROR ⬅1171(2)—DISPOSAL
—REVERSAL—TRIVIAL EXCESS—ASSIGNMENT
OF ERRORS — SPECIFICATION — PARTICULAR-
ITY.
    An assignment of error to an allowance of
$172.55, of which $34 was possibly errone-
ous, will be entirely overruled when the $34
deduction would make no appreciable difference
in the result, especially where there is no as-
signment specifying the $34 item.
    [Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4547, 4548; Dec. Dig. ⬅
1171(2).]

10. RAILROADS ⬅159(4) — LIENS — PERSONS
ENTITLED TO—STATUTE.
    Vernon's Sayles' Ann. Civ. St. 1914, art.
5640, giving a lien to mechanics, laborers, and
operatives on railway construction work, applies
to a subcontractor's foreman or superintendent
earning $200 per month and doing an appreci-
able amount of manual labor.
    [Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 489, 490; Dec. Dig. ⬅159(4).]

Appeal from District Court, Tarrant Coun-
ty; Marvin H. Brown, Judge.

Action by J. E. Collins and others against
the Texas Building Company and others.
Judgment for plaintiffs, and certain defend-
ants appeal. Affirmed as modified.

D. E. Decker, of Quanah, and H. A. Turn-
er, of Ft. Worth, for appellants. J. C. Wil-
son, Thompson & Barwise, Bryan, Stone &
Wade, and W. C. Blalock, all of Ft. Worth,
for appellees.

CONNER, C. J. In September, 1912, the
Quanah, Acme & Pacific Railway Company, a
corporation, duly organized under the laws
of the state of Texas, contracted with the
Southwestern Construction Company, an-
other corporation duly organized under the
laws of the state of Texas, to do all the work
and furnish all of the material necessary to
the construction of the roadbed and to lay
the track for a line of railway from Padu-
cah, in Cottle county, Tex., to a point in
Motley county, Tex., a distance of approxi-
mately 40 miles. The construction company
in turn sublet the contract to the Texas
Building Company, another corporation, and
the latter company in turn contracted with
various firms and individuals to do all the
grading, clearing, grubbing, excavating, and
embankment work on specified miles of the
contemplated road, and some of these firms
and individuals later in turn sublet portions
of the work that they had contracted to do.
The contracts referred to in a general sense
may be said to be interdependent, and for the
gradation work payment was provided in a
fixed sum per square foot for grubbing and
clearing, and a fixed sum per cubic yard for

the moving of dirt and rock. It appears that the work was completed in October, 1913, and that soon thereafter one W. B. Drake instituted a suit against the Texas Building Company to recover an amount alleged to be due him for services or material furnished in the construction of the road, and garnished the construction company, alleging that there was reason to believe that the construction company had funds of the building company in its possession. At a later period, it appears that J. E. Collins and several others, who had performed labor hereinafter to be more particularly mentioned, instituted suit against the Texas Building Company to recover sums alleged to be due them. These several suits, upon motion duly made, were consolidated, and the railway company and the Southwestern Construction Company answered that there was a balance due from the railway company to the construction company, under the contract between them hereinbefore referred to, of $27,480.48, which had been retained under the terms of the contract, and this sum the railway company and the construction company, by their answers, tendered into court. These companies also set up that there were numerous other specified parties who had claims against the Texas Building Company; and it was prayed that they might be required to intervene and set up their rights to the fund in question. Numerous parties thereafter did intervene and set up claims, as will hereinafter more particularly appear. The garnishment suit of W. B. Drake against the Texas Building Company was later dismissed on the ground of the notorious insolvency of the building company. So that, in the final form of the litigation, this contest is one between the Quanah, Acme & Pacific Railway Company and the Southwestern Construction Company on the one side, and J. E. Collins and numerous others on the other side. As against the railway company and the construction company, Collins and other laborers and materialmen, asserting claims, substantially alleged that a greater sum than $27,480.48 as tendered was due from the railway company to the construction company, under the terms of the contract between them. The several claimants, however, as among themselves set up priorities of right to the fund referred to and of lien upon the railroad as alleged.

The trial was before the court without a jury, and the court's conclusions of fact and law are before us. The court found and adjudged that the total amount of the funds remaining in the hands of the railway and construction companies due under the contracts was $32,185.98, which the judgment of the court required these corporations to deposit in the registry of the court. The claimants were divided into classes A, B, C, and D. In class A were some 13 claimants, in whose favor the court found sums severally aggre-

gating $28,538; three of the claimants were included within class B, the total of class B's claims amounting to $2,553.45; there were some five of class C's creditors, whose claims aggregated $3,310.30. The court found and adjudged that the creditors in class A were entitled to recover of the railway and construction companies their several claims and to a first lien upon the railway, after which the creditors in class B were entitled to a like judgment with foreclosure of lien for their several claims, and that, after the satisfaction and payment of the claims in classes A and B, then what fund remained should be ratably paid to the creditors specified in class C. No lien was found in favor of the creditors in classes C and D. It was adjudged that the creditors in class D take nothing, and, as they are not represented on this appeal, it will be unnecessary to further notice the claims of this class.

The railway and construction companies have prosecuted an appeal from the judgment against them, and one of the creditors in class C has likewise appealed from the court's judgment, complaining of the adjustment of the priorities.

The record before us is very voluminous, and the numerous briefs and conflicting claims of the parties have rendered the case one somewhat difficult of disposition. It seems manifest that we cannot within reasonable limits state or discuss at length all of the details of the case. We think we can but briefly, though perhaps irregularly, dispose of such of the questions presented as we deem material to our final disposition, and, so proceeding, we will first attempt to dispose of the appeal of the railway and construction companies.

[1] Appellants, the railway and construction companies, insist that the court erred in rendering judgment against them in excess of the sum of $27,480.48, for the reason, as alleged, that none of the interpleaded parties deny the correctness of the sum so tendered, and for the further reason that there is evidence that the sum so tendered was the correct amount. In the interest of brevity, we will not undertake to set out the pleadings of the several interveners relating to the subject; but such pleadings have been examined and we find that several of them allege that "they are without sufficient information to enable them to affirm or deny the allegations of the first paragraph (the paragraph of the answers setting forth the amount due under the railway contracts as claimed by appellants), except that they are informed, and so charge, that the said construction company was at the time complained of, and is now, indebted to the building company in the sum stated, or a greater sum than stated." Another allegation of the intervening creditors is to the effect that in computing the amount due from the construction company to the Texas Building Company, the former

charged certain amounts "for rent or lease of construction material or construction equipments, and other such items which the construction company was not entitled to charge against the building company, and which, if deducted, would make the construction company owe the building company a greater sum than $27,480.48." Yet another answer of an appellee alleges that "it has not sufficient knowledge to enable it to form a belief as to the amount owing by the construction company on the building company's contract, and demands strict proof as to all of said facts."

The trial seems to have proceeded upon these allegations; the several parties presenting evidence pro and con tending to fix the true amount of the indebtedness of the railway and construction companies to the Texas Building Company, and no objection appears to have been offered to any of this evidence on the ground of a want of pleadings; and such ground will not now be adopted by us as a sufficient cause for disturbing the judgment in respect to the total amount found and adjudged by the court to be due from the construction company to the Texas Building Company, and which is made available for distribution among the claimants of the fund.

[2] Another principal contention of appellants in this connection is that the amount due the building company should have been limited by the court to the amount tendered, for the reason that the amount tendered is the amount shown in the final estimate of the railway company's engineer. It is true, as appellants insist, that the contracts between the railway company and the construction company, and between the construction company and the building company, provide for a final estimate on the part of the railway company's engineer, and in legal effect as between these companies make such reports conclusive; but appellants' failure in this respect consists in the fact that the court has found that no final estimate of the engineer was proven. Appellants offered in evidence an instrument relied upon by them as such final estimate, but it was unsigned and uncertified to by the railway company's engineer, as the contracts provide should be done; and the court found that it was but a mere memorandum and not entitled to the legal effect of a final estimate, and this finding on the part of the court we feel unable to disturb.

[3] Nor, after an examination of all of the evidence, are we able to say that the court's findings and judgment as to the true amount due, except to the extent hereinafter stated, is in other respects unsupported by the evidence. In arriving at the true amount due, the trial court disallowed, some wholly and others in part, certain charges made by the construction company against the Texas Building Company, and which the construction company, in its statement of the ac-

count, had deducted from the total amount due the building company. One of the principal of these items was a charge by the railway company of $15,341.37 for the rent of cars by the building company from the railway company, during the progress of the work at the rate of $1 per day. The court found from the evidence that 45 cents only should have been charged for the rent of these cars. Complaint is made of this; but we think we cannot disturb the court's conclusions in this respect. There was evidence tending to show that 45 cents per car was a reasonable and customary charge at the time, and appellants rely only upon an asserted agreement on the part of the Texas Building Company to pay $1 per car. It is true that an auditor or bookkeeper testified that the charge of $1 per day had been made in accordance with an agreement between the construction company and the building company; but he acknowledged that he had not seen the agreement and no such agreement was offered in evidence. Nor do we think that the mere fact that from month to month the rental charge for cars appeared in unchallenged statements of the construction company to the building company is conclusive as against appellees, the claimants to the fund. As seen, there is no sufficient proof that the cars were furnished upon a written agreement for $1 per day; and all that appears, from which any other agreement could be implied, is that it is not affirmatively shown that the Texas Building Company objected to the charge so made. No specific agreement between the construction company and the building company, either before the cars were furnished or later, appears to have been made, and we do not see sufficient reason for disturbing the finding of the court stated, to the effect that appellees were not precluded in any way from contesting the item mentioned.

[4] Another charge of $50 against the building company for a payment of that amount to a Mexican as damages for personal injuries received during the work was wholly rejected by the court; and, while it is true, as will be a little later more fully shown, that the contract between the construction company and the building company authorized the construction company to pay claims against the building company, we think the contract related to only such claims as might constitute a lien against the railway; and it is not pretended that the claim of the Mexican could be enforced by such a lien. Indeed, there seems to be no serious contention before us that this claim was improperly rejected.

[5] The court further rejected an item of $460.50 of which ruling appellants complain. As to this item the record shows that one Schraeder in August, 1913, shortly before the completion of the road, shipped to his own order to Paducah, Tex., "Notify Texas Build-

ing Company," two cars of posts; that these posts, without the consent of Schraeder or of the transportation company, were obtained by the Texas Building Company, and used by it in the construction work on the appellant company's railroad, after which the appellant railway company paid Schraeder $460.50 for the posts, and charged the payment to the account of the Texas Building Company. The trial court held that appellants were not authorized to do this, and charge the same against the funds in its hands; basing his ruling upon the ground that at the time of this payment the claim of Schraeder had not been assigned to the railway company, and that the payment had been made after due notice to the railway company of the claims of the various parties in this cause who have been awarded liens by the judgment, and upon the further ground that the claim for the posts had not been filed in the manner required by law to entitle it to a place in class B relating to the claims of materialmen. The following is one of the paragraphs of the contract between appellant railway company and the appellant construction company:

"Eleventh. Should there be any unsatisfied claims for damages to persons or property at the time of the completion of the work, the chief engineer of the company shall have the right to estimate and finally determine the amount of such damages and pay the same to the proper parties, and all such sums so estimated and paid shall be deducted from what is due the contractors."

Paragraphs 18 and 20 of the contract between the construction company and the Texas Building Company read as follows:

"Eighteenth. Before final payment shall be required to be made by company (the construction company) under this contract, the contractor (the Texas Building Company) shall acknowledge and · deliver, under their hands and seals, a release and discharge of and from any and all claims and demands for and in respect of all matters and things growing out of or connected with this contract or the subject-matter thereof, and of or from all claims and demands whatsoever."

"Twentieth. It is finally covenanted and agreed by and between the parties hereto for themselves, the subcontractors, executors, administrators, successors, and assigns, that this contract in all of its terms and provisions shall be binding upon them, and each and every one of them, and that the work covered by this contract and all the money due thereunder, shall be free from and not liable to any liens or charges at law or in equity, or under the mechanics' lien act of this state."

It is perhaps to be implied from the fact that Schraeder shipped the posts to his own order that the sale of the posts was intended as a cash sale, and that, the Texas Building Company having obtained possession of the same without the consent of the railway agent, Schraeder was in position and possibly threatening to repossess himself of the posts; whereupon, the posts being already in place upon the construction work of the railway company, the latter paid Schraeder's bill, as stated. At all events, by reference . to Vernon's Sayles' Texas Civil Statutes, ar-

ticle 5623, Schraeder was a materialman having the right under the statute to fix a lien upon the railroad for the value of the posts used in its construction; and, whether this lien had been actually fixed or not by giving written notice to the railway company as provided for in that statute, we think, under the terms of the paragraphs of the contracts which we have quoted, that it was the clear right of the railway company to relieve itself under the circumstances from the claim of Schraeder by the payment of his claim, and no authority has been cited by appellees, and we have found none, that would deny the appellant railway company the· right to charge this payment in its settlement with the building company, merely because at the time of the payment some one or more of the creditors in classes A and B had already given the railway company notice of their claims. We accordingly hold that from the sum of $32,185.98, found by the court to be due from appellants, there should be deducted the said sum of $460.50, with legal interest thereon from the date of its said payment in August, 1913; and the judgment below will be so reformed as to so show. In other respects the judgment of the court fixing the sum due from appellants to the Texas Building Company will be affirmed.

[6] Another contention of appellants is that the court erred in taxing the costs of the court below against them, and in not allowing them reasonable attorney's fees, the insistence being that appellants are merely in the attitude of stakeholders contended for by appellees, but we think the contention must be overruled. Appellants are not in the position of mere stakeholders tendering into court the amount due the Texas Building Company. As we have seen, appellants were contestants upon this issue. They combated the contention that more than the amount tendered in their pleadings was due, and they in fact did not tender the true amount due as found by the court, nor indeed did they follow the tender made in their pleadings by an actual deposit of any sum into the registry of the court.

[7] Another contention of the appellant railway company is that the court erred in rendering a personal judgment against it for "any amount"; it being urged that the appellee creditors were only entitled to liens against the railroad as adjudged by the court; but we find no substantial merit in this contention. The appellant railway company confessed its possession of a large fund to which the appellee creditors were entitled. To the extent at least of the fund as so confessed, the railway company was in the position of a stakeholder, and liable in personam; and the court's decree specifically acquits both appellants from all liability of whatever kind, upon the payment into the registry of the court of the amount found by the court to be due from them. It may also

be said in answering this contention that confessedly the creditors in classes A and B, who alone were awarded liens upon the railroad, are entitled to enforce such liens; and there is no evidence indicating that the value of the property upon which the liens are so fixed is insufficient to pay off all claims of creditors in those classes. Nor is the personal judgment in favor of the creditors in class C made to operate beyond the surplus left, if any, after payment of the preferred claims in classes A and B. No prejudicial effect of the personal judgment, therefore, is apparent.

The appellant railway company also attacks the court's findings and judgment in favor of a number of the creditors specified in class A; but, inasmuch as like attacks are more particularly made by the appellant Dupont De Nemours Powder Company, an intervener below, and one of the creditors of the Texas Building Company placed by the court in class C, we will undertake to dispose of these contentions in answering the brief of the latter appellant.

[8] As stated, the appellant Dupont De Nemours Powder Company was placed by the court in class C, that is to say, as among the creditors of the Texas Building Company, who had furnished material for the construction of the railroad, but who had not fixed liens thereon in accordance with the statutes; and it will be seen by a mere arithmetical computation that the fund directed by the court to be paid into its registry by the appellants, the railway company and the construction company, will be sufficient to satisfy the claims of all creditors in classes A and B to whom are awarded liens, and yet leave a surplus to be divided pro rata among the creditors in class C. In order, therefore, to lessen the number of priorities of claims, and thus increase the amount to be apportioned to creditors in class C, the Dupont De Nemours Powder Company attacks numerous claims specified in class A. Thus it is insisted that the Gaines Bros., a firm composed of Frank Gaines and J. H. Gaines, who are specified among the creditors in class A and who are adjudged to be entitled to recover $1,679.21, are not entitled to priority over the creditors specified in class C, including the Dupont De Nemours Powder Company, on the ground that:

"There was no proof sufficient to establish a lien in favor of said Gaines Bros., against the railway company or the Southwestern Construction Company, or said fund of $32,185.98."

The evidence shows that Gaines Bros. had a written contract with the Texas Building Company to do all of the gradation work on mile 19 of the Quanah, Acme & Pacific Railway; that they worked in fulfillment of their contract an average of 30 teams for about 117 days; the Texas Building Company agreeing to make payments to them at prices set forth in the contract, being so much per square foot and per cubic yard for the different character of work done. The Gaines Bros. also had a contract with one D. R. Morris, a subcontractor under the Texas Building Company, to do all of the gradation work on mile 9, and a few stations on mile 10, at the same prices stipulated in their contract with the Texas Building Company. Frank Gaines testified that there was a balance due on their contract with the Texas Building Company of $870.40, and a balance due on the contract with D. R. Morris of $808.74. The Gaines Bros. sought to recover these balances, alleging that they were due them for personal labor and for the use of their teams and tools in the construction of the railroad. The witness further testified that they averaged about 30 hired men per day, and that all of the laborers employed by them had been paid; that they owned all the tools, wheelers, scrapers, and teams used by them; that the witness drove teams, was foreman part of the time, and did just anything there was to do; that his father, J. H. Gaines, cleared and grubbed and drove teams most of the time; that J. H. Gaines was not a foreman, that he just worked on the grade —actual labor; that he cleared and grubbed and drove teams, all but a few days, between October, 1912, and March 6, 1913. He ploughed, or cleared, or grubbed, and did any other manual labor as a laborer during all the time he was there. That the full amount paid to the firm of Gaines Bros. by the building company for their work and the work of Morris was $13,877.76, all of which was paid out in wages to the men and for expenses in feeding the men and for supplies and for the costs of feeding teams; that there was no "profit in that job"; that if they got all the money it would not make wages for themselves and their teams; that the reasonable market value for the use of such teams and tools as Gaines Bros. had about that kind of work per day was about $4.50 a day and 10 per cent. for their tools; that the value of the personal services of J. H. Gaines was about $2 per day.

D. R. Morris testified that he did not think that Gaines Bros. made wages out of the contract he made with them, and the finding of the court was that "none of the persons named in class A earned the respective amounts found to be due as contractors or subcontractors," but earned the same by reason of having performed labor or worked with tools, teams, or otherwise, in the construction of the railroad. Our statute on the subject, Vernon's Sayles' Texas Civil Statutes, article 5640, reads:

"All mechanics, laborers, and operatives, who may have performed labor, or worked with tools, teams or otherwise, in the construction, operation, or repair of any railroad locomotive, car, or other equipment of a railroad, and to whom wages are due or owing for such work, or for the work of tools or teams thus employed, or for work otherwise performed, shall hereafter have a lien prior to all others upon such railroad and its equipments for the

amount due him for personal services, or for the use of tools or teams."

We are of opinion that the evidence above stated fairly brings the firm of Gaines Bros. within the purview of the statute we have quoted. In the case of Ft. Worth & Denver City Ry. Co. v. Read Bros. & Montgomery, decided by this court on February 1, 1913, and reported in 154 S. W. 1027, and in which a writ of error was refused, we held upon a very similar state of facts that laborers who have performed labor or worked with tools, teams, or otherwise, in the construction of the road, and · to whom wages were due for such work, or for the work with tools and teams thus employed, were entitled, under the statute, to the lien therein specified, and that the right was not destroyed by the fact that the laborers claiming such lien had contracted with the general contractors to move dirt and rock at a specified price per cubic yard and to clear land at a specified price per acre. In the case before us, the Gaines Bros. were not mere contractors, dependent alone upon the profits of a contract and, hence, unprovided for by the statute, but were in a very important sense also actual laborers, and also very clearly worked with teams and tools owned by them in the construction of the road and therefore, especially in view of the fact that they received no profit under the contracts fairly within both the terms and beneficial purposes of the statute, which we think should receive a liberal construction, and hence were entitled to recover the amount due them shown to be the reasonable value of the work done in person and with teams and tools. The court, therefore, as we think, committed no error in so finding and in awarding a lien upon the railway to secure the payment of the sum due the Gaines Bros.

[9] Appellant Dupont De Nemours Powder Company also assails the finding of the court in favor of contractors Breeding and Green, who were awarded the sum of $758.96, with foreclosure of a lien upon the railway, and like findings of the court in favor of W. R. Parmer for the sum of $4,551.76; in favor of D. R. Morris for the sum of $5,980.14; in favor of the assignee of the firm of Owens Bros., composed of J. A. Owens, Jr., and E. M. Owens, for the sum of $2,184.97; in favor of J. C. Cupp for the sum of $1,168.51; in favor of W. C. Oglesby for the sum of $798.75; in favor of H. B. Ashburn for $172.55 and of C. E. McClelland for the sum of $590; in favor of T. C. Kennedy and O. W. Kennedy for the sum of $2,552.40; in favor of B. B. Brown for the sum of $590; and in favor of J. E. Collins for the sum of $1,647.65. The persons and firms last named were all placed by the court in class A of the creditors of the Texas Building Company, and the evidence relating to these several claims is so nearly similar and so substantially the same as that given by us in disposing of the attack upon the finding in favor of the Gaines Bros. that we think our conclusions relating to that claim sufficiently disposes of the numerous attacks of the Dupont De Nemours Powder Company last above named, except perhaps we should note that, of the claim of $172.55 found by the court in favor of H. B. Ashburn, $34 was charged for hauling and placing pipe in the streets of Paducah, and not shown to have any connection with the construction of the railroad. Objection is made to the allowance of this $34 in one of the propositions under the assignment attacking the findings in favor of H. B. Ashburn, and possibly a proper deduction of the $34 should have been made; but the item is so small that a deduction of this amount would make such an inappreciable difference in the final results that we have concluded to overrule the assignment altogether, particularly in view of the fact that the assignment attacks the finding in favor of Ashburn as a whole, there being no specific assignment objecting to the inclusion of the $34 in his claim.

Appellant Dupont De Nemours Powder Company's second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth assignments of error are therefore all overruled for reason assigned in disposing of the first assignment relating to the finding in favor of the Gaines Bros.

[10] The appellant also attacks the court's finding in favor of C. J. Larimer for the sum of $646 to secure which the lien upon the railway was adjudged. Larimer is also one of those named by the court in class A of the creditors of the Texas Building Company. The evidence shows that Larimer was employed by the Texas Building Company in connection with the construction of the railroad at a salary of $200 per month and expenses. He owned none of the teams, tools, or appliances engaged in the construction of the road, but acted as a foreman. Larimer testified that his work on the road was that of a foreman "laborer and anything else"; that he spent about an hour a day manual work, that the reasonable value of his services to work an hour a day at such work would be all the way from $1.25 to $1.75 per day; that he was sometimes addressed in communications from the Texas Building Company as "superintendent" and sometimes as "foreman"; that in signing pay checks he designated himself on some of them as "foreman," that he looked after the commissary department when he did not have a commissary clerk, and also looked after collections; that he had an office in Paducah most of the time and had a stenographer; that he hired teams for the building company, and had authority to discharge men; that he advised the company when men were needed, and did whatever was necessary to be done as a superintendent. He further testified: ·

"The first work I did on that extension, I had charge of the grading and concrete work. I worked at that particular time from the 7th or 12th of October, 1912, until the next March or April, then I quit. I went back to work there in June, about June 20th, and was there until October 5th. I do not remember everything in the way of work that I did. I directed the work part of the time. I handled the shovel and filled in as extra brakeman, and tightened bolts on bridges and repaired fences, and did pretty near everything that a man could do on a job of that kind; I loaded steel and unloaded steel. I was doing those things, just one and then the other during the entire time. I was working for the Texas Building Company in the construction of the line of road up there. The balance due me for July and August and September and five days in October is $646.02, for my services alone, actually performed on that work, being 97 days at $6.66 per day, and an expense account of $177.70. The price of $6.66 per day was not reasonable for the services which I performed. The character of work which I performed on that construction work, it was not enough; it was below reasonable."

He also testified that he went out as a brakeman two or three times to comply with the full-crew law; that he assisted in coaling the engine once or twice; that he went out and repaired fences; that he actually performed some of the labor in repairing fences; that he assisted in tightening bolts on the bridge; that he helped handle teams in repairing the bridge over Salt Creek; that he helped handle sand for ballast; and that he performed some manual labor nearly every day.

Numerous authorities have been considered in passing upon the claim of Larimer. They are by no means uniform in their holdings, but we have finally concluded to sustain the court's finding in favor of Larimer, and overrule the assignment which attacks such finding upon the authority of Texas & St. Louis Ry. Co. v. Allen & Humphreys, by our old Court of Civil Appeals, and reported in White & W. Civ. Cas. Ct. App. §§ 568-569. A material question in that case was whether one of the Allens, who performed services as a foreman or superintendent of laborers was entitled to the statutory lien in payment therefor. The court, after quoting in part the statute, which in so far as now here pertinent was then the same as the one we have quoted, say:

"Were the services performed by appellee Allen those of a mechanic, laborer, or operative, within the meaning of the statute? The evidence shows that, under a contract with one Bussey, who was a subcontractor of appellant, Allen performed services as the foreman or superintendent of laborers engaged in the construction of appellant's road, furnished certain tools and teams to carry on the work of construction, and sometimes used the tools himself, and at other times directed their use by the laborers. The court below adjudged him to be a mechanic, and based its decision upon the definition of that word given by Webster. We do not think he was a mechanic within the usual and common acceptation of that word, nor within the meaning and intent of the statute. Neither was he an operative. If he is entitled to claim the benefit of the statute at all, it is as a laborer. It has been held that a timekeeper and superintendent in the employ of a contractor is not a laborer. Missouri, K. & T. Ry. Co. v. Baker, 14 Kan. 563. But we are not disposed so to hold. We think the foreman or superintendent of a company of laborers, who remains with them directing their work, and sometimes working himself, is within the meaning and intent of the word 'laborer,' as used in the statute. While he may not actually work with the shovel, scraper, plow or other implement, he performs a laborious and necessary part of that work by overlooking and directing it, and is as indispensable to the construction of the road as the man who actually uses the tools. We think, therefore, that appellees were entitled to their lien to the extent of the labor thus ·done and performed upon appellant's road."

We have not found where the case, from which we have just quoted, has been disturbed by any subsequent decision of our courts, and conclude, in view of the liberal construction that we think should be given to our statute, that it is our duty to follow and apply the opinion quoted. Appellant Dupont De Nemours ᴋowder Company's thirteenth assignment is, accordingly, overruled.

Other questions presented in the briefs of the parties we think have been sufficiently disposed of in what we have said, and in the trial court's findings. The trial court's findings of fact and law, with exception only as hereinabove noted, are accordingly approved, and the judgment reformed and affirmed, with the costs of the appellant railway and construction companies on appeal adjudged ˌin their favor; the costs in other respects and as to other parties to be taxed as usual.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes