**UNITED STATES of America, Petitioner,**

**v.**

**RAY THOMAS GRAVEL CO., Inc., et al.,**
**Respondents.**

**No. A–9954.**

Supreme Court of Texas.

May 27, 1964.

Rehearing Denied July 15, 1964.

Barefoot Sanders, U. S. Dist. Atty., Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Lee A. Jackson, Joseph Kovner, Earl J. Silbert, Dept. of Justice, Washington, D. C., and John B. Jones, Jr., Asst. Atty. Gen., for petitioner.

Kerr, Day & Cook, Fort Worth, for Ray Thomas Gravel Co.

Fay W. Prescott, Fort Worth, for Glen V. Paden.

Simon & Simon, Fort Worth, for W. C. Turner.

GREENHILL, Justice.

The main question here is whether a federal tax lien is superior, under the circumstances, to the attorney's fees of an interpleader. The amount of the attorney's fee for the interpleader action has not yet been fixed. The courts below have held that the interpleader's attorney's fee is superior. Because of the federal statute and opinions of the Supreme Court of the United States, this holding cannot stand.

The facts are many and complicated. They are set out in the opinion of the Waco Court of Civil Appeals, 373 S.W.2d 333. The amount tendered in the interpleader action was $7,286.07. Against that amount, there were claims for court costs; the federal government had a tax claim for $9,117.19; W. C. Turner had a claim for $2,142.13; Thomas Gravel Company had a claim for $1,345.01; and the interpleader, Glen V. Paden, asked $1,000 attorney's fees for a garnishment proceeding and for the interpleader action. Obviously there was not enough money to pay all the claims. So their priority is of importance. A background of the acts leading to the interpleader follows.

Glen V. Paden employed Seabreez Pools, Inc., to build, on a cost-plus basis, a swimming pool. The contract was executed for Seabreez by J. W. Ratliff, its president; and he was made a party to the various proceedings. His individual liability, if any, is not important to this opinion, and he will not be hereafter mentioned. Work was begun on the pool in May of 1960. It was ultimately determined in 1962 that Paden owed Seabreez $7,286.07 for the project. This money is the subject of the interpleader problem.

The government filed tax liens against Seabreez in 1959, 1960, and 1961. Before September of 1960, the United States had assessed and filed tax liens for $3,905.70. The priority of that lien for that amount is not now challenged by Turner or the gravel company. The government later filed other tax liens totalling $5,211.49, including interest. The liens, including those for $3,905.70, total $9,117.19.

On September 9, 1960, Seabreez executed an assignment to W. C. Turner for $2,142.-13 of the monies to be received by Seabreez from Paden. A dispute then existed as to whether Turner's claim was superior to all claims of the United States. The trial court in this case held Turner's assignment to be superior to all liens of the United States, whether filed before or after the assignment to Turner.

On November 4, 1960, the Ray Thomas Gravel Company filed a suit in Tarrant County against Seabreez for $1,345.01, for labor and material used in building the swimming pool for Paden. On the same day, the gravel company also filed an application for writ of garnishment against Paden, alleging that Paden was indebted to Seabreez. Paden answered that he was not indebted to Seabreez when the writ of garnishment was served upon him, and that he should recover his costs and attorney's fees of $500.00. The answer was controverted by the gravel company, stating that Paden was indebted in quantum meruit on its contract with Seabreez. On January 5, 1961, the Tarrant County court entered judgment that Seabreez was indebted to the gravel company. On Paden's motion for change of venue, the garnishment proceeding was transferred to Johnson County.

Seabreez, Turner, and the United States came into the garnishment, all claiming the money for which Paden was indebted to Seabreez.

In August, 1962 Paden filed this bill of interpleader. His position was that he was a stakeholder. He conceded that he was indebted to Seabreez for $7,286.07, but he was faced with the claims of the United States, the Ray Thomas Gravel Co., and Turner for that money. Paden also sought his attorney's fees: $500.00 for answering the garnishment and another $500.00 for the interpleader. The interpleader action was allowed.

The trial court held that the government's tax lien was inferior to the accrued court costs in Tarrant County in the amount of $19.25, to all court costs in Johnson County, to the claim of Turner, and to the gravel company. The judgment of that court also allowed Paden a lump sum of $1,000.00 for his attorney's fees for (a) the garnishment proceeding and (b) the interpleader action. This $1,000.00 was given priority over all claims except court costs. The judge also found that at the time the writ of garnishment was served on Paden, Paden was indebted to Seabreez in the sum of $2,286.07.

The trial court's judgment directed the clerk to pay, in order, the Tarrant County court costs of $19.25, the Johnson County court costs, certified in the transcript to be $229.50, Paden's attorney's fee of $1,000.00, Turner's claim of $2,142.13, and the gravel company's claim of $1,345.-01, and to pay the balance remaining of the deposit of $7,286.07 to the government. Distribution of the deposit under the judgment would have satisfied all claims in full except the claim of the government. For that reason, only the government had a right to appeal and complain of the judgment.

In its appeal to the Court of Civil Appeals, the government asserted in three separate points of error that the trial court erred in failing to give its claim priority over (1) Paden's attorney's fees, (2) the gravel company's claim, and (3) Turner's claim. It did not complain of the trial court's failure to give its claim priority over court costs.

■ The Court of Civil Appeals held that all the government's liens were superior to the claim of the gravel company. No application for writ of error was filed attacking that holding, and we regard that holding as final. It also held that Turner's claim was superior to the government's tax lien except as to the first $3,905.70. The government does not attack that holding, and Turner filed no application for writ of error. So we also regard that holding as final. The Court of Civil Appeals held that the attorney's fees of Paden for the *garnishment* proceedings were not superior to the government tax lien. Paden did not file an application for writ of error and did not assign that holding as error. The Court of Civil Appeals further held, however, that the attorney's fee for Paden as to the *interpleader* action was superior to the tax lien; but since the amount of the attorney's fee for the interpleader (alone) had not been fixed, that claim for attorney's fees was severed, and as to it, the judgment of the trial court was reversed and the cause remanded to the trial court. The remainder of the judgment was modified in keeping with the court's holdings and, as modified, was affirmed.

Under the judgment of the Court of Civil Appeals the order of priority of the various claims was as follows: (1) court costs; (2) Paden's attorney's fee for the interpleader action; (3) the government's claim for $3,905.70; (4) Turner's claim for $2,142.13; (5) the government's claim for its balance of $5,211.49; and (6) the gravel company's claim for $1,345.01. Paden's attorney's fees for the garnishment were adjudged to be inferior to all claims of the United States. That court did not otherwise determine the priority of that claim, and this latter matter is unimportant here.

Only the government filed application for writ of error, and it attacks only the holding that the claim of Paden for an attorney's fee in the interpleader action is superior to its claim. Paden insists that the holding is correct. In the alternative, Paden has a cross-point asserting that his

attorney's fees should be placed ahead of the claims of Turner and the gravel company. In reply to the cross-point, Turner insists that inasmuch as no complaint by application for writ of error has been made of that portion of the Court of Civil Appeals' judgment establishing priority of its claim, the judgment has become final to that extent. No one complains of the order of the Court of Civil Appeals severing the claim for attorney's fees as a separate cause and as to such claim reversing the judgment of the trial court and remanding the cause for re-trial.

■ The federal cases hold that the priority of liens, generally speaking, depends upon the time at which they become fixed or choate. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955). The government's position is that its lien became choate first: that its lien was fixed before the suit began, and that the attorney's fees have not yet been fixed.

■ In United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), the question was whether attorney's fees on a note were prior to a federal tax lien. The amount of the fees had not been established. To be choate, the court said (1) the identity of the lienor must be known, (2) the property subject to the lien must be established, and (3) the amount of the lien must be established. Since the third element was missing, the claim was held to be inchoate. It is also missing here.

It is clear that under this test, applicable when federal law controls, the government's present claim is superior to the interpleader attorney's fees. The question, then, is whether the government is correct in contending that this case is controlled by federal rather than state law.

■■ The Court of Civil Appeals recognized that in general the priority among claims when one is a federal tax lien is a matter of federal law. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed.

264 (1955). That court proceeded to distinguish the present case from those situations in which the general rule applies, and based its decision on state law. Its decision is supported by alternative holdings. The court held that since the government had voluntarily intervened in the suit, it took the suit as it found it. The case was in state courts and was under the jurisdiction of state law; and Texas follows the rule that:

> " * * * a disinterested stakeholder who has reasonable doubts as to the party entitled to the funds or property in his possession, and who in good faith interpleads the claimants, is entitled to an allowance for attorney's fees." 48 A.L.R.2d 192.

Alternatively, the Court of Civil Appeals held that interpleader attorney's fees were in the nature of court costs, and that court costs were properly the first assessment against the impleaded fund.

The question of which jurisdiction's law controls to determine the priority of liens when a federal tax lien is involved has been before the courts on a number of occasions. Consistently, the federal courts have held it a federal question to be controlled by federal law. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955). That opinion makes clear that both the question of which law to apply and the question of whether or not the particular case is of the type of cases controlled by that law are federal questions.

Just as with the jurisdiction question, there have been a number of cases before the courts dealing with the particular problem we are now confronted with—the priority between federal tax liens and attorney's fees.

In United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247 99 L.Ed. 268 (1955), a case originating in Texas, involving the priorities of federal tax liens and a lien of garnishment, the United States Supreme Court held:

> "If the garnishment lien is not prior to the Government liens, and we have held that it is not, certainly fees allowed in that proceeding are not prior to the Government liens, and the authorization of the payment of the attorney's fees prior to the Government liens was error."

In United States v. Chapman, 281 F.2d 862 (10th Cir. 1960), the Liverpool & London case was cited as controlling on this point of priority between federal tax liens and attorney's fees:

> "The propriety of the allowance of costs, including a reasonable attorney's fee, to a plaintiff in an interpleader action is well recognized, but here this judicial prerogative collides with the supremacy of the federal tax lien. Under the Ball and the London & Liverpool cases, and under the decisions of the lower federal courts announced since those decisions, the innocent stakeholder, even though he asserts no rights to the fund in dispute, may not recover his costs and attorney's fees when to do so would invade the paramount federal tax lien."

The government in the present case did not, and does not, claim priority over the general court costs. See Stanley v. Schwalby, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960 (1895).

█ We are constrained to follow the federal courts in their interpretation and application of the federal tax statutes. The cases previously cited clearly hold that the federal tax lien which is choate under Sections 6321–6323 of the Internal Revenue Code of 1954 has priority over interpleader attorney's fees. Consequently, we hold that the first tax lien, for $3,905.70, which no one disputes as being prior to the other claims of the other impleaded parties, has priority over the interpleader attorney's fees. After the government, the next in priority is Turner's claim for $2,142.13. His claim comes ahead of the subsequently

filed federal lien, since that matter became final in the Court of Civil Appeals.

■ For those portions of the case not controlled by federal law, state law applies. Thus, the priorities between Turner and the attorney's fees are a matter of state law. In his brief to this Court, Paden asks that in the event we hold, as we do, that the federal tax lien is superior to the attorney's fees, we should order the attorney's fees to be paid out of the sum remaining in the registry of the court after paying the federal government. Paden further states that the attorney's fees should be the total sum of $1,000.00, as it presently is, rather than fixed separately for the interpleader and the garnishment.

■ The Texas rule is that the innocent stakeholder in an interpleader is entitled to attorney's fees, to be paid out of the impleaded fund. Nixon v. Malone, 100 Tex. 250, 98 S.W. 380 (1906); Greer v. Franklin Life Ins. Co., 148 Tex. 166, 221 S.W.2d 857 (1949). Hence, we agree with Paden's contention. Paden's claim for an attorney's fee for the interpleader action is entitled to priority over Turner's claim.

■ Because of the error of the Court of Civil Appeals in giving priority to Paden's attorney's fee for the interpleader action over the government's claim, the judgment of the Court of Civil Appeals must be reversed. Under Rule 505, Texas Rules of Civil Procedure, it becomes the duty of this Court to render the judgment the Court of Civil Appeals should have rendered. Under our holdings herein, the judgment of the trial court was clearly erroneous and that judgment must be reversed and the cause remanded to the trial court. Since priority and the amount of all claims to the fund on deposit in the registry of the court must be adjudicated before the clerk can pay out the fund, all claims should be asserted in one action. Accordingly, the order of the Court of Civil Appeals severing the cause of action for attorney's fees must be set aside and the entire cause remanded to the trial court.

■ Inasmuch as the cause is to be remanded, we take occasion to note that on the record before us, Paden is not entitled to an attorney's fee in the garnishment action. The trial court found that at the time the writ of garnishment was served, Paden was indebted to Seabreez in the sum of $2,286.07. Since Paden answered the writ stating under oath that he was not at such time indebted in any sum, he was not entitled to an attorney's fee. See Rules 668 and 677, Texas Rules of Civil Procedure; May v. Donaldson, 141 S.W.2d 702, ·706 (TexCiv.App.1940, no writ).

The order of the Court of Civil Appeals severing the cause of action of Paden for attorney's fees is set aside, and the judgments of the Court of Civil Appeals and the trial court are reversed and the cause is remanded to the trial court. The trial court will fix the amount of the attorney's fees to be allowed Paden in the interpleader action and adjust the rights, if any, of the parties to interest on their respective claims and render judgment directing payment of the claims in the following order of priority:

1. Court costs

2. The government's claim for $3,905.70

3. Turner's claim for $2,142.13, out of which shall come Paden's attorney's fee for the interpleader action. United States v. Chapman, 281 F.2d 862, at 871 (10th Cir.1960)

4. The government's remaining claims. This will exhaust the fund.

No complaint is made of the manner in which costs were assessed in the Court of Civil Appeals. Costs in this Court are assessed one-half to Paden and one-half to Turner.