**Austin Randall MOODY, Appellant,**

v.

**Thelma Ruth MOODY, Appellee.**

**No. 552.**

Court of Civil Appeals of Texas,
Corpus Christi.

March 18, 1971.

Rehearing Denied April 8, 1971.

Benjamin D. Lucas, San Antonio, for appellant.

Maloney, Black & Hearne, Thomas Black, Austin, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit to enforce the judgment of the district court of the State of Nevada which awarded Thelma Ruth Moody, appellee, monthly alimony. The Nevada decree provided that the appellant was to pay appellee $50.00 per month during the months of June through November of 1963 and thereafter $300.00 per month until her death or remarriage. The appellant's basic defense was that appellee had remarried. The case was tried before a jury which found that appellee had not remarried. The trial court entered judgment for 68 accrued and unpaid alimony payments with interest on each payment from the time it

accrued for the total amount of $24,225.51 less an offset in the amount of $300.00 which the jury found in favor of the defendant.

The appellant's only evidence of appellee's remarriage was a copy of a Mexican marriage certificate. The English translation of the instrument shows that the only certification of the document was as follows:

"This is a true and correct copy taken from the original which I certify and expedite at the request of interested party in Columbia, Nuevo Leon, on the 19th day of October, 1963.

OFFICIAL OF THE CIVIL REGISTRY.

/s/ B. Esparza
Prof. Baltezar Esparza Guerra

(Seal of the Court of Civil Registry, Columbia, Nuevo Leon)"

The appellee objected to the introduction of this instrument on the basis that it was hearsay evidence, and because the instrument did not comply with the statutory method of authentication of foreign official documents under Article 3731a, Vernon's Ann.Civ.St.

This article provides in part that any written instrument which is permitted by law to be made, filed, kept or recorded by an officer or clerk of another nation, shall, so far as relevant, be admitted in the courts of this State as evidence of the matter stated therein, provided the party offering it has delivered a copy thereof to the adverse party a reasonable time before trial. Sec. 4 of this statute states that:

"Such writings may be evidenced by an official publication thereof or *by a copy attested by the officer having the legal custody of the record, or by his deputy.* Except in the case of a copy of an official writing from a public office of this State or a subdivision thereof, *the attestation shall be accompanied with a certificate that the attesting officer has*

*the legal custody of such writing.* If the office in which the record is kept is within the United States or within a territory or insular possession subject to the dominion of the United States, the certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of his office. *If the office in which the record is kept is in a foreign state or country, the certificate may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent or by any officer in the foreign service of the United States, or by any officer of a United States military government, stationed in the foreign state or country in which the record is kept, and authenticated by the seal of his office.* * * *"* (Emphasis supplied.)

█ It is undisputed that the instrument in question was not an original record or an official publication. The certification on the instrument only states that it is a true and correct copy taken from the original. It does not say it is a copy of the original of what. It does not state where it is on file, who filed it or who has legal custody of the original record. This statute which permits official written instruments to be admitted into evidence, provides that the copy of such instrument may be attested by the officer having the legal custody of the record, or by his deputy. The attestation shall however be accompanied with a certificate that the attesting officer has the legal custody of such writing. If the office in which the original record is kept is in a foreign country, the certificate may be made by any of the officers named in the statute (See Sec. 4, portion emphasized) provided it was authenticated by the seal of his office. These requirements were not met. We hold that such instrument as offered, was inadmissible as evidence of the proof of the marriage.

Antonio Abarca, an official court interpreter, was qualified by the appellant as an

expert on Mexican marriage certificates. He testified on cross-examination that any person could have gone to Columbia, Mexico on the date stated and could have used the names of Harry Markel (the person appellee is alleged to have married) and Thelma Ruth Moody as assumed names. He testified that such a person could have obtained the document in question for $50.00 to $100.00.

The appellee testified that she did not marry Harry Markel the person named in the instrument; had never been to Columbia, Nuevo Leon, Mexico; that the last time she had been in Mexico at all, was 18 years ago; that she had never heard of Professor Baltezar Esparza Guerra; that from the interpretation of the document it did not list her parents' names correctly, nor did it list her residence correctly. She stated that she had no idea how the document in question came into existence.

■ Harry Markel testified that he had never been to the town of Columbia, Mexico; that he was not in Mexico on that date but was in Austin, Texas; that he had never heard of the Mexican citizens named in the document; that the information contained in the document was incorrect in numerous respects concerning the name of his mother, his age, and the spelling of his name. Finally he testified that he had not on that date, or any time, entered into a marriage ceremony with Thelma Ruth Moody. There was ample evidence to support the jury's finding that Harry Markel and appellee had not married.

■ The purpose of the authentication statute is to give credence to official documents so that the same may have value as competent evidence and may be relied upon. See 23 Tex.Jur.2d, § 295, p. 433, Evidence. Appellant's instrument lacked these qualities. One of the purposes of the statute is to prevent fraud and a miscarriage of justice.

Appellant in a number of points of error attempts to make a collateral attack on the final judgment of divorce from Nevada. The properly authenticated Nevada judgment was introduced into evidence. It clearly shows that it was valid on its face. The main thrust of appellant's contention that the judgment is void was based on the fact that neither the appellant nor appellee had complied with the domiciliary requirements in Nevada to entitle the Nevada court to exercise jurisdiction over the parties. He relies upon the fact that he had not given up his medical license in Texas. He stated that he had continually maintained his residence in Texas, although he lived and worked in Nevada for more than the statutory period to obtain residency there. The record shows that the appellant was the original plaintiff in the Nevada divorce suit. The pleadings attached to the Nevada decree, show that he alleged that he was a bona fide resident of Clark County, Nevada. He swore that the facts contained in the pleadings were true and correct. The appellee filed a cross-action to the divorce suit and the court granted appellee a divorce on the cross-action.

■ If one of the parties participated in a divorce suit, without objecting to the jurisdiction of the court; he may not thereafter assail the decree in a collateral proceeding on the theory that one or more of the parties were non-residents. 34 Tex. Jur.2d § 260, p. 173, Judgments. See 27B C.J.S. Divorce § 343, p. 811; § 354 and § 357. We hold that the Nevada decree is not void and was not subject to a collateral attack by appellant.

■ Appellant argues that since Texas does not permit alimony after a divorce, the Nevada judgment should not be entitled to full faith and credit in this jurisdiction. This point is without merit. A valid foreign judgment was rendered. The payments became vested on becoming due. If the court which rendered the judgment had jurisdiction of the parties and the subject matter, then as to such accrued payments,

the judgment shall be protected and will be given effect and full faith and credit in our courts. Stout v. Stout, 214 S.W.2d 891 (Tex.Civ.App.—Texarkana 1948, writ ref.); Gard v. Gard, 150 Tex. 347, 241 S.W.2d 618 (1951); 27B C.J.S. Divorce § 373, p. 863 and § 328, p. 787, Divorce.

We have considered all of appellant's points of error and they are overruled.

Judgment of the trial court is affirmed.

SHARPE, Justice (concurring).

I concur in the result.