**AIRLINE COMMERCE BANK,**
**Appellant,**

v.

**COMMERCIAL CREDIT CORPORATION**
**et al., Appellees.**

**No. 1210.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Nov. 26, 1975.

Rehearing Denied Dec. 17, 1975.

Jess Hall, Jr., Liddell, Sapp, Zivley & Brown, Houston, for appellant.

J. H. Painter, III, Painter & Painter, R. Burton Ballanfant, Asst. U. S. Atty., Edward B. McDonough, Jr., U. S. Atty., William L. Bowers, Jr., James R. Gough, Asst. U. S. Attys., Houston, for appellees.

TUNKS, Chief Justice.

This case involves priorities among liens on a parcel of real estate owned by Richard and Edith Bouchillon and William and Shirley Bouchillon. Appellee Commercial Credit Corporation (CCC) brought this suit to collect on a note and deed of trust given to it by the Bouchillons. Appellant Airline Commerce Bank was a named defendant, CCC claiming that Airline Bank had asserted a prior interest in and had foreclosed on the property involved. Airline Bank answered by a general denial and by a bill of interpleader in which it admitted the foreclosure, alleging that it was then holding $2371.49 representing excess from the foreclosure sale, and requested the court to determine the parties' rights to the fund. Airline Bank also requested that the United States be joined as a defendant for the purpose of adjudicating its rights in the fund pursuant to its claims against the Bouchillons under federal tax liens. The United ed States was joined and filed its answer, alleging that it had federal tax liens against the Bouchillons in the amount of $17,705.38, which liens were prior to the rights of the other parties to the action, including Airline Bank.

The property of which the proceeds from the foreclosure sale are involved here was conveyed in trust to Airline Bank as security on a promissory note in the amount of $15,115.51, which was executed by the Bouchillons on August 31, 1970. The deed of trust was recorded on September 2, 1970. On September 11, 1970, the Bouchillons executed a promissory note in favor of CCC and secured by a deed of trust covering the same property. That deed of trust was recorded on September 14, 1970. The claims of the United States are based on its assessments of taxes evidenced by tax liens filed on October 30, 1970 and November 30, 1970. On August 3, 1971 Airline Bank foreclosed under its deed of trust and conducted a trustee's sale as provided in the instrument. The proceeds of the sale were $30,500. On July 6, 1972, CCC obtained an interlocutory judgment against William and Shirley Bouchillon for $39,415.85 plus $3,000 attorney's fees, which judgment ordered foreclosure and sale of the property already foreclosed and sold by Airline Bank. CCC instituted this suit against the Bouchillons and Airline Bank to recover $23,000 allegedly still due and owing under that judgment. CCC and the United States agreed that Airline Bank's $15,115.51 note had priority over either of their claims. Airline Bank claimed, however, that in addition to the $15,115.51 value of its promissory note, it was also entitled to retain out of the proceeds of the trustee's sale: (1) attorney's fees for collection of the note; (2) payment on another note executed on September 9, 1970 by Red's Coach Sales, a partnership,

and R. H. and W. R. Bouchillon, as individuals, in the amount of $6,500; (3) attorney's fees on the $6,500 note; and (4) a contractual trustee's commission of 5% of the proceeds from the sale. CCC and the United States contested Airline Bank's retention of all these amounts except for the face value of the $15,115.51 note and the interest and taxes thereon.

At trial in the district court, with the court as trier of fact, CCC and the United States agreed that each would take equal shares of any funds found to have been unjustifiably retained by Airline Bank. Pursuant to its findings of fact and conclusions of law, the court found that Airline Bank was entitled to retain only the principal, interest and delinquent ad valorem taxes on its $15,115.51 note and granted judgment to CCC and the United States in the amount of $11,600.83 plus $2,371.49 interpleaded by Airline Bank. The judgment has become final as to the Bouchillons, but Airline Bank has perfected this appeal.

■ Appellant first contends that the trial court erred in finding the United States had valid tax liens attached to the property, because the evidence of the tax liens and assessments was not properly admitted. The evidence offered by the United States consisted of copies of certificates of tax assessments kept by the Internal Revenue Service and certified copies of federal tax liens filed with the County Clerk of Harris County. As government records, their admissibility is governed by Tex.Rev. Civ.Stat.Ann. art. 3731a which provides,

> Sec. 4. Such writings may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy. Except in the case of a copy of an official writing from a public office of this State or a subdivision thereof, the attestation shall be accompanied with a certificate that the attesting officer has the legal custody of such writing.

The copies of the notices of tax liens were so attested and certified by the deputy clerk of Harris County and were admissible under Article 3731a. Appellant contends, however, that the notices of tax liens were not admissible because of failure to comply with Article 3726, Tex.Rev.Civ.Stat.Ann., which allows instruments recorded with the county clerk to be admitted into evidence, in some circumstances, without proof of execution. It is a lengthy statute, and appellant has not indicated how it applies here or what part of the statute was violated in admitting this evidence. Since there was no specific objection under the statute, either here or in the trial court, we are unable to discover any failure to comply with Article 3726. *Davis v. Grogan Mfg. Co.*, 177 S.W.2d 213 (Tex.Civ.App.—Texarkana 1943, no writ).

■ The certificates of tax assessments are federal records; therefore, in order for copies of them to have been properly admitted under Article 3731a, they would not only have to have been attested to by their legal custodian, but also accompanied by the certificate required in the statute. *Moody v. Moody*, 465 S.W.2d 836 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.), *cert. denied*, 405 U.S. 990, 92 S.Ct. 1255, 31 L.Ed.2d 457 (1972). This requirement was not fulfilled. Although, as the United States argues, many official government records are "self-admissible" under the common law, we have neither found nor been cited any authority for the "self-admission" of *copies* of such records. The error of the trial court in admitting the copies of the certificates of assessment is not reversible error, however, because the notices of tax liens present sufficient evidence of their existence to support the trial court's finding the United States has valid tax liens and assessments in the amounts reflected in those records. *Whitener v. Traders and General Ins. Co.*, 155 Tex. 461, 289 S.W.2d 233, 236 (1956); Tex.R.Civ.P. 434.

■ Appellant contends the trial court erred in refusing to allow it to deduct the principal and interest on the $6,500 note

executed by the Bouchillons on September 9, 1970 from the proceeds of the foreclosure sale. Appellant asserts that the deed of trust given it to secure the $15,115.51 note also covered the subsequent $6,500 note by virtue of a so-called "dragnet clause" in the deed which recited that the deed of trust would secure any existing or future indebtedness between the parties. In order for such a clause to operate to include another indebtedness, the second indebtedness must be found to have been "reasonably within the contemplation of the parties to the mortgage at the time it was made." *Moss v. Hipp*, 387 S.W.2d 656 (Tex.Sup.1965). The trial court found the $6,500 note was not contemplated by all the parties to the deed of trust held by Airline Bank at the time the instrument was signed. In support of this finding were the court's further findings that the $6,500 note was secured, as recited on the face of the note, by one or more security agreements, and that it was a partnership note of Red's Coach Sales, individually guaranteed by Richard and William Bouchillon. There was testimony by an officer of Airline Bank that the $6,500 note was executed as a renewal of an unsecured note in the same amount executed by Red's Coach Sales previous to the execution by the Bouchillons of the deed of trust in question here. The history of those two notes was evidenced by Airline Bank's ledger card entitled "Red's Coach Sales." A separate ledger card entitled "W. R., R. H., Shirley Louise, Edith L. Bouchillon" was also introduced. That ledger card reflected Airline Bank's records of the $15,115.51 note, but did not mention either of the $6,500 notes recorded on the "Red's Coach Sales" card. Regardless of the capacity in which Richard and William Bouchillon signed the $6,500 note, we think the recitation of security agreements on the face of the note, coupled with Airline Bank's separate records of the two indebtednesses, was sufficient evidence from which the trial court could conclude that the $6,500 note was not contemplated by the parties as included by the deed of trust at the time it

was executed: the record does not show as a matter of law that the deed of trust was intended to secure the $6,500 note. *Moss v. Hipp*, 387 S.W.2d 656, 658 (Tex.Sup.1965).

■ Appellant also challenges the trial court's finding that CCC had a valid lien against the Bouchillons' property in the amount of $23,000. The interlocutory judgment for CCC against the Bouchillons is evidence that the Bouchillons were indebted to CCC in the amount of approximately $43,000, and that the property in question here was security for that debt. The testimony of Mr. J. H. Painter, CCC's attorney, showed that CCC had turned that debt over to him for collection and that the debt had been reduced to $23,000. This testimony was an admission against the interest of CCC that it was entitled to less than the amount specified in the interlocutory judgment.

■ Appellant alleges further that it is entitled to retain, out of the proceeds of the trustee's sale, its attorney's fees for collection of the two notes. In view of our holding that the trial court was justified in finding the $6,500 note was not secured by the deed of trust, we need not consider whether attorney's fees for collection of that indebtedness were properly withheld from the proceeds of the sale. The record reflects that appellant also withheld $2,420.62 contractual attorney's fees for collection of $15,115.51 note which lien was superior both to CCC's claim and to the tax liens. Appellant contends that under the Tax Lien Act, 26 U.S.C. § 6323, this priority extends to its attorney's fees incurred in enforcing that lien. As the statute has been construed by the Fifth Circuit,

> The relevant section of the Tax Lien Act provides that if the federal tax lien is not valid against a competing lien, then the priority of the competing lien is extended to include attorney's fees incurred in collecting the obligation secured.

*Citizens Co-op Gin v. United States*, 427 F.2d 692, 699 (5th Cir. 1970). The opinion goes on to say that even when the compet-

ing lien is superior, that superiority extends to attorney's fees "only if under Texas law a lienholder's priority is extended to include attorney's fees incurred in collecting the obligation," and cites, as an example of such superiority, contractual provisions for attorney's fees in mechanic's liens. *Citizens Co-op* at 699. Here the contract provided for attorney's fees. Texas law allows retention of attorney's fees out of the proceeds of a trustee's sale if it is shown that "the amount was reasonable and that the services of the attorney were necessary to enable the trustee to properly execute the power, and that he actually rendered service to the company in the matter." *American Nat. Ins. Co. v. Schenck*, 85 S.W. 2d 833, 839 (Tex.Civ.App.—Amarillo 1935, no writ). Other language in *Schenck* indicates that the withholding of attorney's fees is to be allowed only where the debt is collected through judicial foreclosure. We think the better rule is stated in *Daniel v. Henderson*, 183 S.W.2d 242, 245 (Tex.Civ.App.—El Paso 1944), aff'd, 143 Tex. 321, 184 S.W.2d 467 (1945):

> [T]he note in question had been declared due and placed in the hands of an attorney for collection prior to the institution of the suit. The attorney's fees provided in the note are therefore part of the indebtedness due  .   .  ..

The evidence showed not only that the attorney's fees were provided in the deed of trust, but also that the expenses of collection were actually incurred and were reasonable. Under the applicable federal and Texas law, appellant's lien for its attorney's fees incurred in collecting $15,115.51 note was superior to those of CCC and the United States, and Airline Bank was entitled to retain $2,420.62 paid as attorney's fees.

■ Appellant also withheld a contractual trustee's commission of 5% of the proceeds of the sale, as provided in the deed of trust. Appellees allege that the Tax Lien Act precludes Airline Bank from recovering the trustee's fee because there is no evidence that the fee was an expense "actually incurred in collecting or enforcing the obligations secured  .   .   ." as required in that statute. The trustee's fee, like the attorney's fees, was part of the contract between the bank and the Bouchillons, and as such was part of the indebtedness secured by the deed of trust. The agreement between CCC and the United States that they would divide any funds recovered from Airline Bank did not operate to give the benefit of the federal statute to CCC. Moreover, by agreeing that it would not attempt to establish priority of its tax liens over CCC's lien, the United States merged its claim with that of CCC, removing the bank's claim for its contractual trustee's fee from the requirements of the federal statute.

■ Finally, appellant alleges error of the trial court in concluding it was not entitled to attorney's fees from the fund interpleaded in this action. It is clear that Airline Bank is not entitled to attorney's fees from the part of the fund awarded to the United States as payment on the federal tax liens. *Spinks v. Jones*, 499 F.2d 339 (5th Cir. 1974); *United States v. Ray Thomas Gravel Co.*, 380 S.W.2d 576 (Tex.Sup. 1964).

■ Appellant contends, however, that it is entitled to its attorney's fees out of the portion of the interpleaded fund awarded to CCC. "Texas follows the rule that  .   . 'a disinterested stakeholder  .   .   . who in good faith interpleads the claimants, is entitled to an allowance for attorney's fees.'" *United States v. Ray Thomas Gravel Co.*, 380 S.W.2d at 580. The record in this case reflects that appellant interpleaded the United States and CCC only after it was made a party defendant to this suit, and that appellant at all times contested the claims of the other parties. Under these circumstances the trial court did not abuse its discretion in refusing to grant attorney's fees out of the interpleaded fund:

> Appellants are not in the position of mere stakeholders  .   .   ..  They com-

bated the contention that more than the amount tendered in their pleadings was due, and they in fact did not tender the true amount due as found by the court, nor indeed did they follow the tender made in their pleadings by an actual deposit of any sum into the registry of the court.

*Texas Bldg. Co. v. Collins*, 187 S.W. 404, 407 (Tex.Civ.App.—Fort Worth 1916, writ ref'd n.r.e.).

The trial court awarded judgment in favor of Commercial Credit Corporation and the United States against Airline Bank for $11,600.83, the amount found to have been wrongfully withheld by the bank, plus the $2,371.49 interpleaded by the bank, making the total amount of the judgment $13,-972.32. In view of our holding that Airline Bank was entitled to retain its contractual attorney's fees of $2,420.62 for collection of the $15,115.51 note and its contractual trustee's commission of $1,525 on the foreclosure sale, the amount of the judgment is ordered reduced to $10,026.70. As so modified, the judgment of the trial court is affirmed.